No. 23-50201

# In the United States Court of Appeals for the Fifth Circuit

LA UNION DEL PUEBLO ENTERO; FRIENDSHIP–WEST BAPTIST CHURCH; SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT; TEXAS IMPACT; MEXICAN AMERICAN BAR ASSOCIATION OF TEXAS; TEXAS HISPANICS ORGANIZED FOR POLITICAL EDUCATION; JOLT ACTION; WILLIAM C. VELASQUEZ INSTITUTE; JAMES LEWIN; FIEL HOUSTON, INCORPORATED,

*Plaintiffs-Appellees*

*v.*

GREGORY W. ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS, ET AL,

*v.*

SENATOR PAUL BETTENCOURT; REPRESENTATIVE BRISCOE CAIN,

*Appellants*

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

## APPELLANTS' OPENING BRIEF

*(Counsel Listed on Inside Cover)*

John Scott
Provisional Attorney General

Brent Webster
First Assistant Attorney General


Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

Michael R. Abrams
William F. Cole
Assistant Solicitors General

Justin W. Manchester
Assistant Attorney General

Counsel for Third-Party Appellants Senator Paul Bettencourt and Representative Briscoe Cain

## CERTIFICATE OF INTERESTED PERSONS

No. 23-50201

LA UNION DEL PUEBLO ENTERO; FRIENDSHIP-WEST BAPTIST
CHURCH; SOUTHWEST VOTER REGISTRATION EDUCATION
PROJECT; TEXAS IMPACT; MEXICAN AMERICAN BAR
ASSOCIATION OF TEXAS; TEXAS HISPANICS ORGANIZED FOR
POLITICAL EDUCATION; JOLT ACTION; WILLIAM C. VELASQUEZ
INSTITUTE; JAMES LEWIN; FIEL HOUSTON, INCORPORATED,

*Plaintiffs-Appellees*

*v.*

GREGORY W. ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR
OF TEXAS ET AL,

*v.*

SENATOR PAUL BETTENCOURT; REPRESENTATIVE BRISCOE CAIN,

*Appellants*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, third-party appellants, as governmental parties, need not furnish a certificate of interested persons.

/s/ Lanora C. Pettit
LANORA C. PETTIT
*Counsel of Record for Third-Party Appellants*

## Statement Regarding Oral Argument

This case presents an important, and now recurring, issue: does the legislative privilege protect against intrusive discovery into the subjective motivations of members of the Texas Legislature? Although the significance of this issue would ordinarily warrant argument, the motion to compel at issue was filed in the context of objections raised at the deposition of a non-party witness, Alan Vera, about his interactions with state legislators. During the pendency of this appeal, Mr. Vera tragically died at the Texas State Capitol while waiting to testify before a legislative committee—rendering much (if not all) of this dispute moot. To the extent any questions about the discoverability of certain of Mr. Vera's documents survive him, the Court's recent decision in *La Union Del Public Entero v. Abbott*, 68 F.4th 228 (5th Cir. 2023), conclusively resolves those questions in the third-party appellants' favor. Because this case turns on a straightforward application of *Abbott* as well as the Court's earlier decision in *Jackson Municipal Airport Authority v. Harkins*, 67 F.4th 678 (5th Cir. 2023), oral argument is unnecessary to aid the Court's decisional process. If the Court schedules argument, however, third-party appellants respectfully reserve their right to participate.

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Certificate of Interested Persons | ii |
| Statement Regarding Oral Argument | iii |
| Table of Authorities | vi |
| Introduction | 1 |
| Statement of Jurisdiction | 2 |
| Issues Presented | 3 |
| Statement of the Case | 3 |
| I.    Factual Background | 3 |
| II.   Procedural Background | 6 |
| A.   Lawsuits challenging S.B. 1 | 6 |
| B.   The discovery order at issue in *Abbott* and its resolution in this Court | 8 |
| 1.   Motions practice in the district court | 8 |
| 2.   This Court's reversal of the district court's order | 11 |
| C.   The discovery order at issue in this appeal | 14 |
| 1.   The deposition of Alan Vera and Plaintiffs' motion to compel | 14 |
| 2.   The district court's order compelling discovery | 17 |
| 3.   This Court's stay of the district court's order | 18 |
| Summary of the Argument | 19 |
| Standard of Review | 22 |
| Argument | 23 |
| I.    This Court Has Jurisdiction to Hear This Appeal. | 23 |
| A.   *Abbott* resolves that this Court has statutory jurisdiction under the collateral-order doctrine | 23 |
| B.   Third parties have standing to pursue an appeal for many of the same reasons discussed in *Abbott* | 25 |
| II.   Plaintiffs' Requests to Re-Depose Mr. Vera And Obtain Documents To Facilitate That Deposition Are Moot | 29 |

III. Plaintiffs' Discovery Requests as to Documents and Emails Between Mr. Vera and Legislators Are Barred by Legislative Privilege ........................................................................... 32

    A. Counsel for the state defendants properly preserved the legislative privilege ............................................................. 33

    B. The legislative privilege shields communications between Mr. Vera and legislators regarding the enactment of S.B. 1 ............... 39

Conclusion ..................................................................................... 44

Certificate of Service ...................................................................... 45

Certificate of Compliance .............................................................. 45

# Table of Authorities

Page(s)

**Cases:**

*In re Air Crash at Belle Harbor, New York on November 12, 2001*,
490 F.3d 99 (2d Cir. 2007) ............................................................. 37

*Allen v. Wright*,
468 U.S. 737 (1984) ......................................................................... 29

*Almonte v. City of Long Beach*,
478 F.3d 100 (2d Cir. 2007) ...............................................34, 40, 41

*Amin v. Mayorkas*,
24 F.4th 383 (5th Cir. 2022) ......................................................... 29

*In re Auclair*,
961 F.2d 65 (5th Cir. 1992)............................................................. 37

*Bogan v. Scott-Harris*,
523 U.S. 44 (1998) ........................................................................... 42

*Branch v. Phillips Petroleum Co.*,
638 F.2d 873 (5th Cir. 1981)..................................................... 23-24

*Bruce v. Riddle*,
631 F.2d 272 (4th Cir. 1980) ......................................................... 41

*Castillo v. Cameron Cnty.*,
238 F.3d 339 (5th Cir. 2001) ............................................ 20, 26, 27

*Cates v. LTV Aerospace Corp.*,
480 F.2d 620 (5th Cir. 1973) ......................................................... 24

*Cohen v. Beneficial Industrial Loan Corp.*,
337 U.S. 541 (1949) ......................................................................... 12

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
704 F.3d 413 (5th Cir. 2013)........................................................... 30

*E.E.O.C. v. Wash. Suburban Sanitary Comm'n*,
631 F.3d 174 (4th Cir. 2011) ....................................................35, 38

*Eastland v. U. S. Servicemen's Fund*,
421 U.S. 491 (1975) ......................................................................... 35

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*,
391 U.S. 253 (1968) ...................................................................*passim*

*Fisher v. United States*,
    425 U.S. 391 (1976) ........................................................ 37
*Freedom from Religion Found. v. Abbott*,
    58 F.4th 824 (5th Cir. 2023) ................................... 21, 30, 32
*In re Grand Jury Proceedings in Matter of Fine*,
    641 F.2d 199 (5th Cir. 1981) ........................................... 37
*Gravel v. United States*,
    408 U.S. 606 (1972) ...................................................... 34
*Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*,
    768 F.2d 719 (5th Cir. 1985) ....................................... 35-36
*In re Hubbard*,
    803 F.3d 1298 (11th Cir. 2015) ................................... 34, 41
*ITT Rayonier Inc. v. United States*,
    651 F.2d 343 (5th Cir. 1981) ........................................... 30
*Jackson Municipal Airport Authority v. Harkins*,
    67 F.4th 678 (5th Cir. 2023) ..................................... *passim*
*Kokesh v. Curlee*,
    14 F.4th 382 (5th Cir. 2021) ............................................ 19
*La Union Del Public Entero v. Abbott*,
    68 F.4th 228 (5th Cir. 2023) ..................................... *passim*
*League of United Latin Am. Citizens v. Abbott*,
    No. 22-50407, 2022 WL 2713263 (5th Cir. May 20, 2022) ............... 24
*Lebron v. Nat'l R.R. Passenger Corp.*,
    513 U.S. 374 (1995) ...................................................... 29
*Lee v. City of Los Angeles*,
    908 F.3d 1175 (9th Cir. 2018) ...................................... 28, 35
*Leonard v. Martin*,
    38 F.4th 481 (5th Cir. 2022) ....................................... 24, 25
*Marceaux v. Lafayette City-Par. Consol. Gov't*,
    731 F.3d 488 (5th Cir. 2013) ........................................... 22
*Marylanders for Fair Representation, Inc. v. Schaefer*,
    144 F.R.D. 292 (D. Md. Oct. 1992) ................................... 37-38
*MINPECO, S.A. v. Conticommodity Servs., Inc.*,
    844 F.2d 856 (D.C. Cir. 1988) ......................................... 39
*Mohawk Industries Inc. v. Carpenter*,
    558 U.S. 100 (2009) ................................... 12, 13, 18, 19, 24

*Murphy v. Fort Worth Indep. Sch. Dist.*,
    334 F.3d 470 (5th Cir. 2003) ............................................................ 30

*Overby v. U.S. Fid. & Guar. Co.*,
    224 F.2d 158 (5th Cir. 1955) ............................................................ 27

*Roark & Hardee LP v. City of Austin*,
    522 F.3d 533 (5th Cir. 2008) ............................................................ 29

*Rodriguez v. Pataki*,
    280 F. Supp. 2d 89 (S.D.N.Y. 2003) .......................................... 10, 13

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999) .......................................................................... 23

*Sandra T.E. v. S. Berwyn Sch. Dist. 100*,
    600 F.3d 612 (7th Cir. 2010) ............................................................ 37

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007) .......................................................................... 23

*Stokes v. Sw. Airlines*,
    887 F.3d 199 (5th Cir. 2018) ...................................................... 24, 25

*Sumrall v. Green Tree Fin. Serv. Corp.*,
    180 F.3d 265 (5th Cir. 1999) ............................................................ 20

*Tenney v. Brandhove*,
    341 U.S. 367 (1951) ............................................................... 33, 40, 42

*U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*,
    513 U.S. 18 (1994) ............................................................................ 31

*United States v. Campbell*,
    73 F.3d 44 (5th Cir. 1996) ................................................................ 37

*United States v. Chagra*,
    701 F.2d 354 (5th Cir. 1983) ............................................................ 27

*United States v. Craig*,
    528 F.2d 773 (7th Cir. 1976) ............................................................ 38

*United States v. Gillock*,
    445 U.S. 360 (1980) .......................................................................... 42

*United States v. Helstoski*,
    442 U.S. 477 (1979) .......................................................................... 40

*United States v. Herrera-Ochoa*,
    245 F.3d 495 (5th Cir. 2001) .............................................................. 3

*United States v. Johnson*,
    383 U.S. 169 (1966) ..................................................................... 33-34

*United States v. Munsingwear, Inc.*,
    340 U.S. 36 (1950) ................................................................ 2, 30
*United States v. Smith*,
    454 F.3d 707 (7th Cir. 2006) ................................................ 37
*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ............................................................. 37
*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
    913 F.3d 443 (5th Cir. 2019) ........................................ 24, 27
*Veasey v. Abbott*,
    888 F.3d 792 (5th Cir. 2018) .............................................. 22
*West Virginia v. E.P.A.*,
    142 S. Ct. 2587 (2022) ....................................................... 29
*Whole Woman's Health v. Jackson*,
    142 S. Ct. 522 (2021) ......................................................... 38
*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018) ...........................22, 24, 25, 32
*Wiwa v. Royal Dutch Petroleum Co.*,
    392 F.3d 812 (5th Cir. 2004) .............................................. 22
*Yovino v. Rizo*,
    139 S. Ct. 706 (2019) ..........................................................31

**Constitutional Provisions, Statutes, and Rules:**

U.S. Const.:
    amend I .....................................................................7, 42, 43
    amend XIV .....................................................................7, 43
    amend XV ......................................................................7, 43
Tex. Const. art. IV, § 22 ....................................................... 35
28 U.S.C.:
    § 1291 ...................................................................... 2, 23, 24
    § 1331 ................................................................................. 2
    § 1343(a)(3)-(4) ................................................................. 2
42 U.S.C. § 1983 .................................................................. 43
52 U.S.C.:
    § 208 .................................................................................. 43
    § 10301(a) ......................................................................... 43

Tex. Elec. Code:
    § 31.004 ...................................................................................... 35
    § 31.003 ...................................................................................... 35
Tex. Gov't Code:
    § 306.008(a) .................................................................................. 9
    § 402.010 ...................................................................................... 35
    § 402.021 ...................................................................................... 35
    §§ 402.042-043 ............................................................................ 35
Fed. R. Civ. P.:
    45 ................................................................................................... 18
    45(d)(3)(A)(iii) ............................................................................. 22
Fed. R. Evid.:
    201(b)(1) ......................................................................................19
    804(a)(5) ...................................................................................... 30

**Other Authorities:**

Appellants' Reply Brief, *La Union Del Public Entero v. Abbott*, 22-
    50435 (July 27, 2022), Doc. 54 .................................................... 11, 25
Brief of the LULAC Plaintiffs as Appellees, *La Union Del Public Entero
    v. Abbott*, 22-50435 (July 18, 2022), Doc. 48 ................................... 25
Brief of Plaintiffs-Appellees, *La Union del Publeo Entero v. Nelson*, No.
    22-50775 (5th Cir. Feb. 13, 2023) ....................................................... 35
Cassandra Pollock, *Texas Gov. Greg Abbott Sets July 8 Date for Special
    Legislative Session on Voting Bill, Other Issues*, Texas Tribune (June
    22, 2021) https:// www.texastribune.org/2021/06/22/texas-greg-
    abbott-special-session/ ................................................................... 4-5
Comm. on State Affs., Witness List, Tex. S.B. 7, 87th Leg., R.S.
    (Mar. 26, 2021),
    https://capitol.texas.gov/tlodocs/87R/witlistbill/html/SB00007S.htm ........... 4
H. Elecs. Comm., Witness List, Tex. H.B. 6, 87th Leg., R.S. (Mar. 25 2021),
    https://capitol.texas.gov/tlodocs/87R/witlistmtg/pdf/C24020210325080
    01.PDF ............................................................................................ 4
H.J. of Tex., 87th Leg.:
    2d C.S. 41-42 (2021) ........................................................................ 5
    2d C.S. 79 (2021) ............................................................................. 5
    2d C.S. 93 (2021) ............................................................................. 5
    2d C.S. 103 (2021) ........................................................................... 5

2d C.S. 105 (2021) ...................................................................... 5

2d C.S. 109 (2021) ...................................................................... 5

2d C.S. 111 (2021) ...................................................................... 5

2d C.S. 118 (2021) ...................................................................... 5

2d C.S. 140 (2021) ...................................................................... 5

2d C.S. 152 (2021) ...................................................................... 5

2d C.S. 162 (2021) ...................................................................... 5

2d C.S. 168 (2021) ...................................................................... 5

2d C.S. 187 (2021) ...................................................................... 5

2d C.S. 271 (2021) ...................................................................... 5

H. Rsch. Org., Bill Analysis, Tex. S.B. 1, 87th Leg., 2d C.S. (2021) ........ 5

Letter, *La Union Del Public Entero v. Abbott*, No. 22-50435 (5th Cir.
June 8, 2022) ........................................................................... 11-12

Lila Hassan & Dan Glaun, *COVID-19 and the Most Litigated
Presidential Election in Recent U.S. History: How the Lawsuits Break
Down*, PBS: Frontline (Oct. 28, 2020),
https://www.pbs.org/wgbh/frontline/article/covid-19-most-
litigated-presidential-election-in-recent-us-history/ ........................... 6

Natalia Contreras, *Alan Vera, A Republican Voter-Fraud Activist, Dies
at Texas Capitol*, Tex. Tribune (May 4, 2023)
https://www.texastribune.org/2023/05/04/alan-vera-dies-texas-
capitol/ .................................................................................... 18-19

Oral Argument Recording, *La Union Del Public Entero v. Abbott*, 22-
50435 (Aug. 2, 2022) .................................................................. 25

Press Release, Off. of Tex. Gov., *Governor Abbott Delivers 2021 State of
the State Address* (Feb. 1, 2021),
https://tinyurl.com/abbott2021address ........................................... 3

Press Release, Off. of Tex. Gov., *Governor Abbott Holds Press
Conference on Election Integrity Legislation* (Mar. 15, 2021),
https://tinyurl.com/abbottelectionconference .................................. 4

S.B. 1, Conference Comm. Rep. 3d Printing,
https://tinyurl.com/sb1conferencecommittee .................................. 5

S.J. of Tex., 87th Leg.:
R.S. 2924 (2021) ........................................................................ 4

2d C.S. 75 (2021) ...................................................................... 5

2d C.S. 182 (2021) .................................................................... 5

2d C.S. 187 (2021) ................................................................. 5

2d C.S. 280 (2021) ................................................................. 5

Tex. Gov. Proclamation No. 41-3852, 46 Tex. Reg. 5109 (2021). ............................ 5

Tex. H.B. 3, 87th Leg., 1st C.S. (2021) ................................. 14

Tex. H.B. 6, 87th Leg., R.S. (2021) .................................. 4, 14

Tex. S.B. 7, 87th Leg., R.S. (2021) .................................. 4, 14

## Introduction

Last month, this Court confirmed—twice—that the "legislative privilege's scope is necessarily broad." *La Union Del Public Entero v. Abbott*, 68 F.4th 228, 236 (5th Cir. 2023); *see also Jackson Municipal Airport Authority v. Harkins*, 67 F.4th 678, 688 (5th Cir. 2023). Moreover, because the legislative privilege preserves the "law-making process" itself, legislators do not waive it "when they communicate with parties outside the legislature, such as party leaders and lobbyists." *Abbott*, 68 F.4th at 236 (cleaned up). And the privilege holds "even when constitutional rights are at stake." *Id.* at 238. In *Abbott*, the Court reversed a district court's order that contravened those principles. It should do so again.

The circumstances underlying this appeal will sound familiar to the Court: this appeal arises from the same consolidated case as *Abbott*; it involves one of the same "lobbyists" as *Abbott*, 68 F.4th at 236; and rather than provide any independent legal reasoning, the order merely incorporates by reference the district court order that was reversed in *Abbott*, ROA.12778-79. The only difference is that rather than seek legislative materials directly *from* the appellant legislators, in this case a different group of plaintiffs sought to re-depose Alan Vera, a volunteer for the Harris County Republican Party who communicated *with* the appellant legislators concerning Texas's election integrity bill, S.B. 1, which passed the Texas Legislature and was signed into law in 2021. These plaintiffs also sought additional documents from Mr. Vera in order to facilitate that deposition.

As *Abbott* has since made clear, the district court's order allowing plaintiffs to inquire into the subjective motivations of members of the Texas Legislature in

passing S.B. 1 was reversible error. Not only would the order distract legislators from their day-to-day work, but it would create a chilling effect that would hamper legislators' ability to solicit the kind of information that is necessary for the "regular course of the legislative process" during which "lawmakers routinely meet with persons outside the legislature—such as executive officers, partisans, political interest groups or constituents." *Abbott*, 68 F.4th at 236.

Even if *Abbott* were not dispositive, because Mr. Vera passed away while this appeal was pending, plaintiffs' efforts to re-depose him—including any ancillary request to obtain documents to facilitate that deposition—are now well and truly moot. Because that mootness arose due to no fault of the parties to this appeal, the district court's order should be vacated in its entirety under the principles announced in *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950), and its progeny. To the extent that the district court's order can be read to continue to require the disclosure of Mr. Vera's documents *without* the possibility of reopening his deposition, this Court should reverse the order because the documents are covered by the legislative privilege for the same reason the same or similar documents were privileged in *Abbott*.

## Statement of Jurisdiction

Plaintiffs invoked the district court's jurisdiction over 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

---

[1] Whether the district court, in fact, had jurisdiction is the subject of the appeal in *La Union del Pueblo Entero v. Nelson*, No. 22-50775 (5th Cir.), which is currently scheduled for oral argument on July 12, 2023.

## Issues Presented

1. Whether the third-party legislators had appellate standing to bring this appeal to protect their own privilege.

2. Whether an order to compel deposition testimony—and documents to facilitate that deposition—is mooted by the deponent's death.

3. Whether the legislative privilege was properly preserved below by counsel representing the State and state officials, who repeatedly objected during Mr. Vera's initial deposition to any questions that would intrude upon the privilege, and, if so, whether the privilege shields communications between special-interest activists and legislators concerning the passage of state legislation.

## Statement of the Case

### I. Factual Background[2]

Following irregularities in the 2020 election, Governor Abbott announced in his 2021 State of the State address that "Election Integrity w[ould] be an emergency item" during that year's legislative session. Press Release, Off. of Tex. Gov., *Governor Abbott Delivers 2021 State of the State Address* (Feb. 1, 2021), https://tinyurl.com/abbott2021address. The next month, Governor Abbott "held a press conference in Houston on the importance of election integrity legislation," during which he noted

---

[2] Although the appellants do not concede that Plaintiffs' allegations are true, this Factual Background is drawn from the relevant, operative complaint, ROA.6623-713, matters submitted in connection with the underlying motion to compel, ROA.12559-662, and materials of which the Court may take judicial notice, *see United States v. Herrera-Ochoa*, 245 F.3d 495, 501 (5th Cir. 2001).

that "[i]n the 2020 election, we witnessed actions throughout our [S]tate that could risk the integrity of our elections and enable voter fraud." Press Release, Off. of Tex. Gov., *Governor Abbott Holds Press Conference on Election Integrity Legislation* (Mar. 15, 2021), https://tinyurl.com/abbottelectionconference. Consistent with the Governor's statements, election integrity was a priority item for the 87th Legislature.

In the regular session of the 87th Legislature, the Texas Senate introduced S.B. 7, entitled "AN ACT relating to elections, including election integrity and security; creating a criminal offense; providing civil penalties." Tex. S.B. 7, 87th Leg., R.S. (2021). The Texas House of Representatives introduced a companion bill. Tex. H.B. 6, 87th Leg., R.S. (2021). Designed as omnibus bills to address (among other things) irregularities observed during the 2020 election, each bill made several changes to the Election Code. *See* ROA.6652. Over the next 10 weeks, the committees considered the bills. The process eventually produced a conference committee report in the Senate, which was designated CSSB 7. S.J. of Tex., 87th Leg., R.S. 2924 (2021). Mr. Vera was an active participant in this process.[3]

CSSB 7 was sent to the House on the final day of the regular session, but many House members chose to walk out of the chamber to deny the House the necessary quorum to pass the bill. *See* Cassandra Pollock, *Texas Gov. Greg Abbott Sets July 8*

---

[3] *See* S. Comm. on State Affs., Witness List, Tex. S.B. 7, 87th Leg., R.S. (Mar. 26, 2021), https://capitol.texas.gov/tlodocs/87R/witlistbill/html/SB00007S.htm (listing Mr. Vera as a witness for the bill); H. Elecs. Comm., Witness List, Tex. H.B. 6, 87th Leg., R.S. (Mar. 25 2021), https://capitol.texas.gov/tlodocs/87R/witlist-mtg/pdf/C2402021032508001.PDF (same).

*Date for Special Legislative Session on Voting Bill, Other Issues*, Texas Tribune (June 22, 2021) https:// www.texastribune.org/2021/06/22/texas-greg-abbott-special-session/.

Because the ongoing walkout of Democratic members of the House prevented votes on several significant pieces of legislation during the Governor's first-called special session, Governor Abbott called a *second* special session that would consider—among other things—legislation "strengthening the integrity of elections in Texas." Tex. Gov. Proclamation No. 41-3852, 46 Tex. Reg. 5109, 5115 (2021). Several days later, the Senate passed CSSB 1, and S.B. 1 was engrossed. S.J. of Tex., 87th Leg., 2d C.S. 75 (2021). This version of S.B. 1 was sent to the House and referred to the Select Committee on Constitutional Rights and Remedies. H.J. of Tex., 87th Leg., 2d C.S. 41-42 (2021).

S.B. 1 passed the House with some changes. H.J. of Tex., 87th Leg., 2d C.S. 79, 93, 103, 105, 109, 111, 118, 140, 152, 162, 168, 187 (2021). The Senate rejected the House amendments, and a conference committee was appointed. *Id.* H.J. at 271. The conference committee then filed a report. S.J. of Tex., 87th Leg., 2d C.S. 182 (2021); S.B. 1, Conference Comm. Rep. 3d Printing, https://tinyurl.com/sb1conferencecommittee. That report became the final version of S.B. 1 and passed both the House and Senate along party lines, S.J. of Tex., 87th Leg., 2d C.S. 187 (2021), after which the Governor promptly signed it into law. S.J. of Tex., 87th Leg., 2d C.S. 280 (2021). Alan Vera was—once again—active in this process. H. Rsch. Org., Bill Analysis, Tex. S.B. 1, 87th Leg., 2d C.S. (2021) (listing Mr. Vera as a witness for the bill).

As this Court described in *Abbott*, S.B. 1 in its final form contained multiple amendments to the Texas Election Code "as it relates to voter registration, voting by mail, poll watchers, and other aspects of election integrity and security." 68 F.4th at 231-32.

## II.  Procedural Background

### A.  Lawsuits challenging S.B. 1

Consistent with the pattern seen throughout the country in 2020,[4] the ink on S.B. 1 was barely dry when the lawsuits began. In these consolidated cases, nearly three dozen private plaintiffs as well as the United States have filed five separate complaints (since consolidated under one lead cause number) that take aim at S.B. 1. To avoid confusion, "Plaintiffs" as that term is used in this brief refers to the plaintiffs who sought to compel discovery from Mr. Vera. They are La Union del Pueblo Entero, Friendship-West Baptist Church, Southwest Voter Registration Education Project, Texas Impact, Mexican American Bar Association of Texas, Anti-Defamation League Austin, Southwest, and Texoma, Texas Hispanics Organized for Political Education, Jolt Action, William C. Velasquez Institute, FIEL Houston Inc., and

---

[4] Lila Hassan & Dan Glaun, *COVID-19 and the Most Litigated Presidential Election in Recent U.S. History: How the Lawsuits Break Down*, PBS: Frontline (Oct. 28, 2020), https://www.pbs.org/wgbh/frontline/article/covid-19-most-litigated-presidential-election-in-recent-us-history/ ("A FRONTLINE analysis of two databases tracking lawsuits found that more than 400 election-related cases have been filed in the U.S. in 2020 by political parties, campaign committees, activists and individual voters.").

James Lewin. *See* ROA.12559.[5] Plaintiffs sued the State of Texas, the Secretary of State of Texas in his official capacity, ROA.6634, and the Attorney General of Texas in his official capacity, ROA.6639, as well as several county law-enforcement and election officials, ROA.6641-42.

Plaintiffs' second amended complaint, filed in January 2022, asserts nine claims under the First, Fourteenth, and Fifteenth Amendments as well as sections 2 and 208 of the Voting Rights Act and Title II of the Americans with Disabilities Act. ROA.6623-713. Plaintiffs allege that, among other things, S.B. 1's changes to the enforcement mechanisms provided in the Texas Election Code will have a chilling effect on voter registration. ROA.6669. Plaintiffs appear to acknowledge that S.B. 1 is "neutral on its face" but contend that "discriminatory intent may still be inferred by analyzing the context during and by which the challenged provisions were enacted, and by reviewing the disproportionate racial impact of the challenged provisions." ROA.6697. For all claims, Plaintiffs seek relief against a host of state and county officials, but *not* any members of the Texas Legislature or Mr. Vera. ROA.6710-11.

---

[5] A different group of plaintiffs in these consolidated cases, LULAC Texas, Texas AFT, Texas Alliance for Retired Americans and Vote Latino sought an order compelling discovery of third-party legislators that was ultimately at issue in *Abbott*. This brief refers to that group as the "LULAC Plaintiffs."

**B. The discovery order at issue in *Abbott* and its resolution in this Court**

    **1.   Motions practice in the district court**

In December 2021, the LULAC Plaintiffs served sweeping third-party subpoenas on Representatives Briscoe Cain and Andrew Murr and Senators Paul Bettencourt and Bryan Hughes. ROA.9127-28, 9156. Most relevant to this filing, those third-party subpoenas sought extensive document discovery to probe the four legislators' subjective intent in enacting S.B. 1—including all documents or communications (a) discussing elections in the States' six largest counties, ROA.9187-88; (b) discussing S.B. 1 and its predecessor bills, ROA.9188; and (c) "related to the anticipated or potential effect" of those bills, ROA.9188. The LULAC Plaintiffs admitted that the purpose of this discovery was to probe those legislators' subjective "intent in passing SB 1." ROA.9128.

    On January 1, 2022, attorneys for the Office of the Attorney General of Texas ("OAG") served a letter on behalf of the third-party legislators objecting to the subpoenas as overbroad and reaching documents protected by legislative privilege. ROA.9231-33. A few weeks later, each of the four legislators filed objections and responses to the LULAC Plaintiffs' subpoenas. ROA.9251-314. After several attempts to meet and confer, the LULAC Plaintiffs filed a motion to compel production of nearly 300 privileged documents. ROA.9131-32.

    The LULAC Plaintiffs presented a variety of arguments to the district court of why they should be entitled to this intrusive discovery, but there are two that particularly implicate Plaintiffs' discovery requests that led to the present appeal. *First*,

for 139 documents, the LULAC Plaintiffs admitted that the documents were subject to legislative privilege. But asserting that the privilege was "qualified," the LULAC Plaintiffs asked the district court to vitiate that privilege by applying a five-factor balancing test developed by an out-of-circuit district court. ROA.9134-35. *Second*, the LULAC Plaintiffs asked the district court to hold that the legislators waived the legislative privilege for 89 documents because they were shared with putatively non-legislative third parties, including the Texas Legislative Council, a legislative agency, and the Texas Lieutenant Governor, who serves as President of the Texas Senate, despite their intimate involvement in the legislative process and despite Texas law confirming both are within the legislative privilege. ROA.9141-42; *see* Tex. Gov't Code § 306.008(a). More relevant here, the LULAC Plaintiffs' motion specifically called out Mr. Vera by name, discussed his affiliation with the Harris County Republican Party ("HCRP"), and demanded that the third-party legislators not be permitted to "assert 14 communications with him [that] are entitled to legislative privilege." ROA.9141; *see also* ROA.9333 (logging communications between Mr. Vera and Senator Bettencourt's General Counsel).

Following a hearing on May 13, ROA.9443, the district court issued a sweeping order granting the LULAC Plaintiffs' motion to compel and overriding the legislators' assertions of various privileges, including legislative privilege and attorney-client privilege, ROA.10412-80. The court expressly refused to apply numerous decisions, including from the Supreme Court and this Court's sister circuits, holding that communications made as part of the legislative process and to individuals performing legislative functions are protected by the legislative privilege even if those individuals

are not employed by the Legislature. ROA.10417-21. It distinguished those authorities on the basis that they either "concerned the application of the legislative privilege to members of Congress through the Speech and Debate Clause, not state legislators," ROA.10418, or the "distinct" concept of "legislative immunity," ROA.10420.

Instead, the district court applied the LULAC Plaintiffs' preferred five-part balancing test, which was announced by a district court nearly twenty years ago but apparently was never subjected to appellate review. ROA.10422-24 (applying *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003)). Applying that test to "several internal documents such as notes and drafts of election legislation as well as communications between the State Legislators and their staff," ROA.10422, the court ordered all but one of the requested documents produced, ROA.10428. In the process, the court vitiated the legislative privilege because "the need for accurate fact finding outweighs any chill to the legislature's deliberations." ROA.10424. The court rejected the LULAC Plaintiffs' theory that sharing information with the Texas Legislative Council vitiated the privilege, ROA.10417 n.1, but the court agreed that providing documents to anyone else breached confidentiality and thus waived legislative privilege—including not just Mr. Vera but also attorneys in the Offices of the Lieutenant Governor and Attorney General, ROA.10419-22.

After the district court held the contested documents were either not protected by any privilege or that those privileges had been waived, the four legislators, including Senator Bettencourt and Representative Cain, who are appellants here, filed a third-party notice of appeal to this Court. ROA.10481-52. In order to ensure an

orderly appellate process, the LULAC Plaintiffs consented to a stay pending appeal in exchange for the legislators' agreement to expedite the appeal. ROA.10489-90. Even though the legislators' motion for a stay pending appeal was unopposed, the district court expressed the view that the "vast majority of the documents" were not even "arguably" privileged and threatened the third-party legislators and their counsel with sanctions if this Court were to "find[] that the vast majority of the documents are in fact not privileged." ROA.10492. Nevertheless, the court agreed to stay its order pending appeal "[o]nly because the motion for stay is unopposed." *Id.*

### 2.　This Court's reversal of the district court's order

Once before this Court, the four appellant legislators—including Senator Bettencourt and Representative Cain—contended that their communications with individuals who are not members of the Legislature, including Mr. Vera, remain protected by the legislative privilege because they served as a source of information for legislators in their work in formulating S.B. 1 regardless of whether they were formally employed by a legislature. *See* Appellants' Reply Br. at 20-21, *La Union Del Public Entero v. Abbott*, 22-50435 (July 27, 2022). Although the United States had not been a party to the LULAC Plaintiffs' discovery requests, it sought and was granted leave to participate in the appeal—with consent from the third-party legislators—to protect its interests in the underlying litigation. Letter, *La Union Del Public Entero v.*

11

*Abbott*, No. 22-50435 (5th Cir. June 8, 2022). Plaintiffs made no similar request despite being aware of the proceedings.[6]

Following briefing, this Court unequivocally agreed with the legislators and reversed the district court's sweeping order in its entirety. *Abbott*, 68 F.4th at 240. As it did the week prior in *Harkins*, 67 F.4th at 684, the Court began by rejecting the LULAC Plaintiffs' argument (and that of the United States) that the Court lacked appellate jurisdiction under the collateral-order doctrine. *Abbott*, 68 F.4th at 232-35. The Court concluded that interlocutory orders denying state legislators' legislative privilege is a class of orders that satisfies the three traditional conditions of the collateral-order doctrine announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). As a class, such orders are conclusive of the issue presented, involve important questions that are unconnected to the underlying merits, and are not adequately vindicable on appeal. *See Abbott*, 68 F.4th at 232-33.

The Court separately considered and concluded that such orders are also consistent with the collateral-order doctrine formulation in *Mohawk Industries Inc. v. Carpenter*, 558 U.S. 100 (2009), "which allows interlocutory jurisdiction when delaying review would harm 'a substantial public interest' or 'some particular value of a high order.'" *Abbott*, 68 F.4th at 233. As the Court put it: "[t]he public has a substantial interest in ensuring that elective office remains an invitation to draft

---

[6] To date, undersigned has also not received a request from the United States to participate in this follow-on appeal.

legislation, not defend privilege logs. Freedom from constant distraction is a high-order value." *Id.*

With respect to the merits of the legislative-privilege question, the Court categorically rejected the same arguments presented here in three phases. *First*, the Court "defin[ed] the privilege's *scope*—that is, the many actions and documents that are within 'the legislative process itself' and that the common-law privilege therefore traditionally protects.'" *Id.* at 235. *Second*, seeing the LULAC Plaintiffs' arguments about the participation of non-legislators in the legislative process as an "indirect attack on the privilege's scope," *id.* at 236, the Court explained that the legislators "did not *waive* the privilege by communicating with individuals who are outside the Legislature." *Id.* at 235. *Third*, the Court explained that "the privilege does not *yield*" based on the amorphous multi-part balancing test adopted in *Pataki. Id.* Based on this three-part analysis, the Court concluded that the legislators' legislative privilege "precludes the compelled discovery of documents pertaining to the state legislative process" that the LULAC Plaintiffs sought, *id.* at 240, including communications between the current appellants and Mr. Vera, *e.g.*, ROA.10459 (requiring production of communications with Mr. Vera because "[a]ny privilege has been waived as the communication with a non-legislative third-party").

Throughout the process of this appeal, all parties were aware of the third-party legislators' privilege objections. Indeed, the pendency of the appeal and its effect on schedules were not infrequent topics of discussion in discovery-related correspondence, filing, and hearings. *E.g.*, ROA.12610, 12695, 12896, 13101.

### C. The discovery order at issue in this appeal

#### 1. The deposition of Alan Vera and Plaintiffs' motion to compel

While the LULAC Plaintiffs were seeking discovery of the third-party legislators, Plaintiffs sought a subset of the same materials—albeit from the third parties with whom the legislators communicated rather than from the legislators themselves. Specifically, in July 2022—while the *Abbott* appeal was pending—Plaintiffs issued document requests to Intervenor-Defendant HCRP, which sought (as relevant here):

- "documents, including but not limited to communications, talking points, and memoranda, sent to or exchanged with the Texas Legislature regarding SB 1, SB 7, HB 3, or HB 6," and

- "documents, including but not limited to communications, talking points, and memoranda, sent to or exchanged with the Office of the Texas Governor, the Office of the Texas Attorney General, the Office of the Texas Lieutenant Governor, or the Office of the Texas Secretary of State regarding SB 1, SB 7, HB 3, or HB 6."[7]

ROA.12561 & nn.4-5. In February 2023, Plaintiffs issued a notice of intent to depose HCRP, Mr. Vera, the Chairman of its Ballot Security Committee, as its representative. ROA.12562, 12589-601, 12607-08. HCRP produced 61 documents in response to this request. *See* ROA.12561, 12636-37.

---

[7] S.B. 7, H.B. 3, and H.B. 6 were earlier iterations of what eventually became S.B. 1. *See* Tex. S.B. 7, 87th Leg., R.S. (2021); Tex. H.B. 3, 87th Leg., 1st C.S. (2021); Tex. H.B. 6, 87th Leg., R.S. (2021); *see also supra* pp. 3-5.

Plaintiffs took Mr. Vera's deposition on February 27, 2023. ROA.12639. During that deposition, Mr. Vera testified that in his role, he worked closely with several legislators in drafting and passing S.B. 1. ROA.12642-44, 12649-52, 12655. Consistent with the privilege assertions that no one disputes were properly preserved in *Abbott*, OAG attorneys representing the state defendants objected based on legislative privilege to questions when "the scope of the question appeared to potentially encompass [Vera's] communications to the legislators or legislative staff in response to a legislative inquiry." ROA.12648.[8] Counsel repeated this objection when necessary, and Mr. Vera was careful not to disclose communications covered by the legislative privilege. *E.g.*, ROA.12656. Mr. Vera also testified that he regularly sent S.B.-1-related communications to members of the Legislature, ROA.12644-45, and members of the Executive Branch, ROA.12657-58, via his personal email account, ROA.12660. Mr. Vera also stated that he saved notes he took while testifying on S.B. 1 during committee hearings. ROA.12644-45. Mr. Vera did not provide copies of these emails to Plaintiffs. ROA.12659.

Counsel for Plaintiffs held Mr. Vera's deposition open, ROA.12662, and filed a motion to compel on Saturday, March 4, 2023, ROA.12559. The motion sought to have the district court direct HCRP "to conduct a search for and produce all relevant documents in response to Plaintiffs' Requests for Production 1 and 3, including

---

[8] Senator Bettencourt and Representative Cain, who were parties neither to the underlying lawsuit nor to the deposition request, were not present. But no one disputes (or has objected to the fact) that OAG represents both the state defendants and the state legislators whose privilege is at issue.

documents in Mr. Vera's personal email address and personal computer," and compel HCRP "to provide deposition testimony in response to Plaintiffs' questions regarding" the Party's communications with legislators and legislative staff." ROA.12577. Plaintiffs argued that Mr. Vera "refused to answer specific questions about his response to legislator inquiries" and that "[w]ithout documents from Mr. Vera's files, Plaintiffs were unable to question Mr. Vera adequately about his communications with legislators and legislator staff." ROA.12564-65.

Ignoring that the district court's prior order had already been stayed and was then subject to appeal in *Abbott*, Plaintiffs relied on that order to argue that the emails and Mr. Vera's answers were not protected by legislative privilege. *First*, Plaintiffs relied on that order's statement that "the legislative 'privilege is personal, and it may be waived or asserted' only 'by the individual legislator'" to assert that no one present at the deposition—HCRP, Mr. Vera, and the OAG attorneys representing the state defendants—could assert the legislative privilege. ROA.12571. *Second*, Plaintiffs relied on that order to argue that the legislators had waived the legislative privilege by communicating with Mr. Vera, who was "a third party to the Texas Legislature." ROA.12572-73. *Third*, Plaintiffs argued based on the order that legislative privilege did not protect factual information that was merely available to legislators at the time a law-making decision was made. ROA.12574. *Finally*, Plaintiffs argued that legislative privilege should yield under the five-factor balancing test the district court applied in its prior orders compelling discovery into privileged information. ROA.12574-77.

### 2.    The district court's order compelling discovery

The district court noticed a hearing on Plaintiffs' motion on March 6, 2023, ROA.12676, and held a hearing on March 7, 2023, ROA.13184. At that hearing, the district court explained that it had "already ruled on any number of occasions that the privilege is only applicable to a legislator and that the legislative privilege can be waived by third parties entering into that relationship that only belongs between a legislator and their staff member." ROA.13191-92. Based on its prior rulings, the district court expressed the view that state defendants' invocation of the legislative privilege was "groundless" and ordered that Mr. Vera would be "redeposed" and the "[c]ost of the second deposition of Mr. Vera will be borne by the State of Texas Attorney General's Office." ROA.13192. And consistent with its prior threat, ROA.10492, the district court further stated that "from here on out, lawyers and individuals will be held in contempt of court for failure to abide by my orders" and "it will go up the food chain, so you can tell that to your office as well." ROA.13206-07. The State made an oral motion for the district court to stay its ruling on the motion to compel, which the district court denied. ROA.13203.

Two days later, the court issued an order formalizing what it had expressed orally at the hearing on the motion to compel. ROA.12773. Expressly incorporating the order at issue in *Abbott*, the court restated that it viewed any objections concerning Mr. Vera's communications with legislators as "meritless." ROA.12779. It further ordered that costs for the renewed deposition be "assessed against the Office of the Attorney General of Texas" because "[c]ounsel in the Attorney General's Office was the individual responsible for asserting the meritless objections."

ROA.12779. The court directed Plaintiffs to serve a third-party subpoena on Mr. Vera under Federal Rule of Civil Procedure 45 and further awarded Plaintiffs "reasonable attorneys' fees associated with the filing of their motion to compel and their appearance at the hearing held on March 7, 2023." ROA.12779.

Senator Bettencourt and Representative Cain filed a third-party notice of interlocutory appeal on March 20, 2023, which was substantially identical to the notice they filed in *Abbott*. ROA.12796.

### 3. This Court's stay of the district court's order

After Plaintiffs served a third-party subpoena on Mr. Vera requiring the production of documents by April 10, 2023, Senator Bettencourt and Representative Cain filed an emergency motion for stay with this Court on March 27, 2023, requesting that the Court stay the district court's order compelling Mr. Vera to produce documents and testify concerning topics covered by legislative privilege pending resolution of the appeal in *Abbott*. Doc. 10. Plaintiffs objected that the court lacked appellate jurisdiction under *Mohawk* and that the legislators could not appeal because they did not individually participate in the deposition or proceedings below. Doc. 35 at 7-12. Nonetheless, this Court retained jurisdiction, granted an administrative stay on April 7, 2023, Doc. 42, and granted the motion to stay in full on April 27, 2023, Doc. 50. The Court did not issue a briefing notice until May 4. Doc. 52.

Coincidentally, Mr. Vera passed away suddenly on May 4, 2023, while awaiting a hearing at the Texas State Capitol. *See* Natalia Contreras, *Alan Vera, A Republican Voter-Fraud Activist, Dies at Texas Capitol*, Tex. Tribune (May 4, 2023)

https://www.texastribune.org/2023/05/04/alan-vera-dies-texas-capitol/.[9] As this Court had previously stayed the district court's order compelling discovery, Mr. Vera was never re-deposed before his death. Following Mr. Vera's death and the issuance of *Abbott*, counsel for appellants asked Plaintiffs if they would be willing to jointly move to vacate the order on the ground that any request to re-depose Mr. Vera (including any requests for documents to facilitate that deposition) were moot and further litigation of the appeal could complicate the upcoming trial. Email from L. Pettit to S. Morales-Doyle, et. al. (May 19, 2023) (on file with author). Plaintiffs declined to participate in a meet and confer about the question, choosing instead to stand on the objections in their opposition to the legislators' request for a stay. Email from S. Morales-Doyle to L. Pettit, et. al. (May 19, 2023) (on file with author).

## Summary of the Argument

**I.**    Because Plaintiffs declined to participate in a meet and confer about the question, the precise scope of their objection to the Court's ability to hear the case is unclear.[10] At least one of the objections raised in opposition to the motion to stay has been resolved: Even after *Mohawk*, the present appeal falls within the scope of the collateral-order doctrine. *Abbott*, 68 F.4th at 232-33. To the extent that Plaintiffs'

---

[9] Although Mr. Vera's death is not included on the record on appeal, the Court may take judicial notice of this fact as it "is generally known within the trial court's territorial jurisdiction." Fed. R. Evid. 201(b)(1); *see also Kokesh v. Curlee*, 14 F.4th 382, 385 n.3 (5th Cir. 2021).

[10] For this reason, appellants have made a good-faith effort to anticipate what Plaintiffs' current objections might be. They respectfully reserve the right to respond to any additional issues Plaintiffs may raise in their brief.

remaining objection sounds in appellate standing, that too is without merit for many of the same reasons. Although "the general rule" is "that nonparties cannot appeal" a lower court's judgment, "that rule has not been rigidly adhered to." *Castillo v. Cameron Cnty.*, 238 F.3d 339, 349 (5th Cir. 2001). There is an equitable exception under which "a nonparty may be allowed to appeal if the decree affects his interests." *Id. Abbott* permitted third-party legislators to assert privilege post-*Mohawk* precisely because the equities involved in preserving the legislative privilege demand that nonparties who "lack appellate remedies available to the contenders in litigation" be permitted to immediately appeal. 68 F.4th at 233. The same equities supported the legislators' standing at the time the appeal was filed.

**II.** Since the appeal was filed, however, Plaintiffs' claimed need for the discovery can no longer be vindicated as a result of Mr. Vera's death. This appeal involves the assertion of legislative privilege applied in two contexts: a deposition and documents "from Mr. Vera's files," without which "Plaintiffs were unable to question Mr. Vera adequately about his communications with legislators and legislator staff." ROA.12564-65. Because Mr. Vera passed away, neither the district court nor this Court can order him to sit for a deposition, and the issues surrounding the scope of legislative privilege as a limitation on his testimony are no longer the subject of a controversy that this Court can resolve. Although the request for documents is admittedly a closer question, because Plaintiffs' only basis for insisting on their production was in order to question Mr. Vera, that need also cannot be vindicated by this Court or any other. Where "effective judicial relief is no longer available," a controversy is moot, *Sumrall v. Green Tree Fin. Serv. Corp.*, 180 F.3d 265, 265 (5th

Cir. 1999) (per curiam), and the Court must decide whether to dismiss the appeal or vacate the lower court's order and thereby clear the road for future litigation, *Freedom from Religion Found. v. Abbott*, 58 F.4th 824, 836 (5th Cir. 2023). Given that no one is responsible for the mootness of this case, and the district court has never had the chance to consider whether the documents at issue should be turned over in the light of *Abbott* or Mr. Vera's death, vacatur is the appropriate remedy.

**III.** If the Court ever reaches the issue, the district court erred in several major respects in ordering the production of Mr. Vera's communications with Texas legislators, and those issues are properly preserved on appeal. The district court's rule that legislators must personally invoke the privilege is incompatible with this Court's statement that one of the privilege's key purposes is to "serve[] the 'public good' by allowing lawmakers to focus on their jobs rather than on motions practice in lawsuits." *Abbott*, 68 F.4th at 237. After all, it would allow litigants to easily circumvent the privilege by seeking documents from non-parties or executive branch officials who communicated with legislators rather than from the legislators themselves. If anything, this is worse than permitting discovery against the legislators themselves because every individual legislator is now forced to monitor every third-party deposition and every hearing at which his communications with unspecified numbers of third parties might come up so that he can either attend in person or send an attorney to object on his behalf. Such a system is unworkable in general, and unjustifiable here where there is no question that Plaintiffs had actual notice of the legislators' objections from prior litigation within the same consolidated case. Because the state

defendants preserved the objection by reasserting it below, the legislators may prosecute this appeal as third-party appellants.

On the merits, this case is governed by *Abbott*. The Court has already held that the legislative privilege applies to communications about S.B. 1 and related legislation, and the privilege was not waived through non-public communications with third parties *including Mr. Vera*. Finally, in the light of the outsized public importance of preserving the privilege and its attendant protections, the privilege does not yield to Plaintiffs' federal constitutional claims.

## Standard of Review

"This court reviews questions of jurisdiction *de novo*, including [whether] a case or controversy has become moot." *Veasey v. Abbott*, 888 F.3d 792, 798 (5th Cir. 2018). The Court reviews a district court's discovery orders for abuse of discretion. *Whole Woman's Health v. Smith*, 896 F.3d 362, 362, 369 (5th Cir. 2018) (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817 (5th Cir. 2004)). "The district court's legal conclusions should be reviewed *de novo*, and its factual findings should not be disturbed unless they are clearly erroneous." *Id.* (quoting *Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 491 (5th Cir. 2013)). In this instance, the relevant rule is Federal Rule of Civil Procedure 45(d)(3)(A)(iii), which provides that a court "must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter."

**ARGUMENT**

## I.   This Court Has Jurisdiction to Hear This Appeal.

To start, Plaintiffs are wrong to reassert the jurisdictional objections that the motions panel (at least implicitly) rejected when it granted the third-party legislators' request for a stay pending appeal. *Compare* Doc. 35, *with* Doc. 50. In their response to that motion, Plaintiffs insisted that the appeal was subject to dismissal because (1) the district court's discovery order is not final within the meaning of section 1291, Doc. 35 at 8-12; and (2) as non-parties who did not seek to intervene in Plaintiffs' efforts to seek discovery against another non-party, appellants lacked standing to appeal. Doc. 35 at 7-8.

The Court need never reach these questions: a federal court may address threshold questions in whatever order it chooses, so long as it does not reach the merits. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999). If the Court concludes that Plaintiffs' request is moot (as it should, *see infra* Part II), it can vacate the decision for further proceedings without ever reaching these objections. But if the Court *does* choose to reach them, *Abbott* expressly resolves Plaintiffs' statutory objection and implicitly forecloses their constitutional one.

### A.   *Abbott* resolves that this Court has statutory jurisdiction under the collateral-order doctrine.

For half a century, this Court has held that nonparties could bring an immediate, interlocutory appeal to challenge an adverse privilege ruling raising an important governmental privilege. *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 878-79 (5th

Cir. 1981) (citing *inter alia Cates v. LTV Aerospace Corp.*, 480 F.2d 620, 622 (5th Cir. 1973)); *see also, e.g.*, *League of United Latin Am. Citizens v. Abbott*, No. 22-50407, 2022 WL 2713263, at *1 n.1 (5th Cir. May 20, 2022). To the extent there was an open question whether the Supreme Court's decision in *Mohawk* abrogated that rule, it has now been resolved, and that "determination whether a given precedent has been abrogated is itself a determination subject to the rule of orderliness." *Stokes v. Sw. Airlines*, 887 F.3d 199, 205 (5th Cir. 2018).

Though 28 U.S.C. § 1291 limits appellate jurisdiction to "final decisions," the "Supreme Court has long given § 1291 a practical rather than a technical construction." *Leonard v. Martin*, 38 F.4th 481, 486 (5th Cir. 2022) (quotation marks omitted). As a result, certain "collateral rulings" are "immediately appealable" if they: "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) [would] be effectively unreviewable on appeal from a final judgment." *Id.* (quoting *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 448 (5th Cir. 2019)).

This Court has reaffirmed twice within the last month that each of those criteria is met here. *First*, the district court's order granting Plaintiffs' motion to compel was conclusive because a failure to comply with it may have resulted in sanctions if Mr. Vera did not produce documents and testify. *Abbott*, 68 F.4th at 233 (quoting *Smith*, 896 F.3d at 367); *Harkins*, 67 F.4th at 683-84. *Second*, this case presents an "important question[] separate from the merits" of the underlying litigation. *Smith*, 896 F.3d at 367. "Here, the underlying *merits* issue is whether [S.B. 1] violates federal law, while the issue in *this appeal* is whether the legislators can claim privilege."

24

*Abbott*, 68 F.4th at 235. *Third*, "the consequence of forced discovery here is 'effectively unreviewable' on appeal from the final judgment." *Smith*, 896 F.3d at 367. The privilege assertion "at issue involves an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *Leonard*, 38 F.4th at 486 (quotation marks omitted). If information is wrongly disclosed, no appellate remedy can "retract privileged information that has been shared into the public domain." *Abbott*, 68 F.4th at 233.

This was not a passing ruling: the question of jurisdiction was a key focus in both the *Abbott* appellees' briefs, Brief of the LULAC Plaintiffs as Appellees at 15-23, *La Union Del Public Entero v. Abbott*, 22-50435 (July 18, 2022), Doc. 48; Appellants' Reply Brief at 2-9, *La Union Del Public Entero v. Abbott*, 22-50435 (July 27, 2022), Doc. 54, and at oral argument, *e.g.*, Oral Argument Recording at 0:55-3:00, *La Union Del Public Entero v. Abbott*, 22-50435 (Aug. 2, 2022). *Abbott*'s resolution of the jurisdictional question is therefore binding law of the circuit unless and until revisited by the en banc Court or the Supreme Court of the United States. *E.g.*, *Stokes*, 887 F.3d at 204-05. Any assertion to the contrary is meritless, if not frivolous.

## B.  Third parties have standing to pursue an appeal for many of the same reasons discussed in *Abbott*.

Also without merit is Plaintiffs' assertion that *because* the legislators are third parties, they lack standing to bring this appeal. Indeed, such an assertion ignores that the primary reason that the legislators *can* bring an interlocutory appeal is that they are non-parties. *Abbott*, 68 F.4th at 234-35. But even under the more general rules of appellate jurisdiction, the legislators need not be parties to the proceedings below to

pursue this appeal. Appellants agree that the "the general rule" is "that nonparties cannot appeal" a lower court's judgment, but "that rule has not been rigidly adhered to; a nonparty may be allowed to appeal if the decree affects his interests." *Castillo*, 238 F.3d at 349. This Court applies a three-part test to determine whether a non-party may appeal: "analyzing whether the non-parties actually participated in the proceedings below, the equities weigh in favor of hearing the appeal, and the non-parties have a personal stake in the outcome." *Id.* (internal quotation marks omitted). Those factors have been met here.

*First*, although as non-parties, appellants do not attend every deposition or discovery conference in this case, they have participated in the proceedings below by vigorously asserting legislative privilege when third-party subpoenas were served *on them* that would cover many of the same documents and testimony relevant here. *See, e.g.,* ROA.9471-97. They then prosecuted *Abbott* before this Court on a highly expedited schedule to vindicate their assertion of legislative privilege. Moreover, as Plaintiffs' response acknowledges (at 4), they are represented by the same OAG attorneys who represent the state defendants.[11] Those attorneys objected to production of documents and testimony in response to Plaintiffs' motion to compel concerning Mr. Vera, ROA.12695-701, and during Mr. Vera's deposition. *E.g.,*

---

[11] Because Mr. Vera is separately represented, joint representation by OAG did *not* give either the legislators or their counsel actual notice that Mr. Vera would be deposed or that counsel for Plaintiffs intended to insist on disclosure of document production and testimony squarely implicated by the then-pending appeal in *Abbott* and likely subject to the district court's agreed-upon stay order.

ROA.12726, 12738, 12747. That is undoubtedly why the district court rejected the privilege assertion on the merits—not based on the state defendants' lack of standing to raise the privilege. ROA.12776-78, 13191-92.

*Second*, the equities favor hearing this appeal, *Castillo*, 238 F.3d at 349, for many of the same reasons discussed in *Abbott*. This Court has held that "a non-party may appeal orders for discovery if he has no other effective means of obtaining review." *United States v. Chagra*, 701 F.2d 354, 359 (5th Cir. 1983). This Court has, for example, allowed the Comptroller of the Currency to appeal the denial of a privilege assertion as a non-party. *See Overby v. U.S. Fid. & Guar. Co.*, 224 F.2d 158, 159 (5th Cir. 1955). This Court reasoned that after production "there would be no further point to the claim of privilege" which "would be irretrievably breached and beyond the protection of an appellate court." *Id.* at 162. Thus, "[t]he appellant, asserting a continuing right of control of, and property right in, the documents" could appeal "whether or not he was formally recognized as a party to the suit." *Id.*

The same principle applies here for the reasons explained in *Abbott*. After all, when deciding whether a case may proceed under the collateral-order doctrine, "the decisive consideration is whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of high order." *Abbott*, 68 F.4th at 232 (quoting *Vantage Health Plan, Inc.*, 913 F.3d at 449 (cleaned up)). The district court's order creates such peril because "[t]he public has a substantial interest in ensuring that elective office remains an invitation to draft legislation, not defend privilege logs." *Id.* at 233.

If anything, the risk is greater here because the question is not whether the legislators should have had to defend their *own* privilege logs but monitor the privilege logs and testimony of other non-parties with whom they may have spoken in the process of drafting legislation but with whom they are otherwise unaffiliated. As a practical matter it is unclear how the district court's rule would work: are all 181 members of the Texas Legislature required to individually attend every deposition in every lawsuit challenging a state law? Is it enough that one legislator attends on behalf of his colleagues? If that is sufficient, why isn't it enough to send a single OAG lawyer? The district court does not say. *See* ROA.12779 n.6. What is clear is that if "[f]reedom from constant distraction is a high-order value" sufficient to shield legislators from their own depositions, *Abbott*, 68 F.4th at 232—it must be enough to shield legislators from having to monitor—let alone sit through—countless numbers of *others*' depositions.

*Third*, Senator Bettencourt and Representative Cain have a personal stake in the outcome of this litigation. Assuming there is enough of a live controversy that the district court's order will actually afford Plaintiffs any relief, *but see infra* Part II, documents these legislators assert are protected by legislative privilege will be disclosed with no opportunity for appellate review, *Abbott*, 68 F.4th at 233, harming them and marking a "substantial intrusion" into the legislative process. *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018). This is particularly problematic as they were appellants in *Abbott*—meaning that they would lose not only their privilege but the benefits of the prior ruling in their favor.

For similar reasons, the district court was wrong to conclude that appellants forfeited their right to assert legislative privilege because "the legislative 'privilege is personal, and it may be waived or asserted' only 'by the individual legislator.'" ROA.12571 (ruling on the legislators' objections); ROA.12778-79 (applying that ruling to the current dispute). "Forfeiture generally does not apply when a claim is raised or decided in the district court." *Amin v. Mayorkas*, 24 F.4th 383, 391 n.4 (5th Cir. 2022) (internal quotation marks omitted); *see also Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995). OAG attorneys representing the state defendants properly preserved these objections, *infra* Part III, and appellants may raise privilege in this appeal even if they are third parties to the litigation below, *contra* ROA.12571.

## II. Plaintiffs' Requests to Re-Depose Mr. Vera And Obtain Documents To Facilitate That Deposition Are Moot.

The Court need not get into these tricky questions of preservation or standing, however, because Mr. Vera's death during the pendency of the appeal moots Plaintiffs' complaint that "[w]ithout documents from Mr. Vera's files, Plaintiffs were unable to question Mr. Vera adequately about his communications with legislators and legislator staff." ROA.12564-65. The mootness doctrine is a fundamental limit on this Court's jurisdiction that ensures compliance with the Constitution's "actual controversy" requirement. *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 541 (5th Cir. 2008) (citing *Allen v. Wright*, 468 U.S. 737, 750, (1984)). Unlike appellate standing, which is judged at the time of the filing of the notice of appeal, *West Virginia v. E.P.A.*, 142 S. Ct. 2587, 2606-07 (2022), "[m]ootness applies when intervening circumstances render the court no longer capable of providing meaningful relief

to the plaintiff," *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013). An issue may become moot on appeal even if a live controversy remains elsewhere in the case. *See ITT Rayonier Inc. v. United States*, 651 F.2d 343, 345 (5th Cir. 1981).

Mr. Vera's unexpected death moots the controversy that led to the district court's order compelling his testimony—namely, whether OAG lawyers raised improper objections during his deposition. *See* ROA.12773-82. In their motion to compel, Plaintiffs sought to obtain additional deposition testimony from Mr. Vera regarding his "communications with legislators and legislative staff," ROA.12577, as well as documents about which they want to "question Mr. Vera," ROA.12564-65. At minimum, this Court cannot affirm the district court's grant of that relief as written, because Mr. Vera's death renders him unavailable for deposition, *see* Fed. R. Evid. 804(a)(5) (listing death as one criterion for being unavailable). Plaintiffs accordingly will not receive the relief they seek—*i.e.*, testimony on the record regarding Mr. Vera's communications with legislators concerning S.B. 1—regardless of this Court's decision. *See, e.g.*, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 272 (1968); *see also, e.g.*, *Murphy v. Fort Worth Indep. Sch. Dist.*, 334 F.3d 470, 471 (5th Cir. 2003) (per curiam).

Once the Court determines the controversy is moot (in whole or in part), it must "consider what relief should issue." *FFRF*, 58 F.4th at 836. For many years, the default rule was that if a case or controversy became moot on appeal, the appellate court would vacate the judgment or order. *Id.* (citing *Munsingwear*, 340 U.S. at 39). But, as this Court recognized earlier this year, "the Supreme Court tempered that

rule in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994)." *Id.* Now the question is an equitable one: what disposition is "most consonant to justice in view of the nature and character of the conditions which have caused the case to become moot." *Bonner Mall*, 513 U.S. at 24 (cleaned up). In particular, the Court looks to whether the party seeking vacatur "caused the mootness by voluntary action" and "the public interest." *Id.* at 24, 26.

At minimum, the portion of the district court's order requiring Mr. Vera to submit to another round of deposition testimony—and requiring OAG to pay for that deposition as well as reasonable attorneys' fees—should be vacated. ROA.12779. After all, a dead man cannot be deposed "[e]ven assuming arguendo that it was error" for OAG to raise legislative-privilege objections. *First Nat'l Bank of Ariz.*, 391 U.S. at 272 (discussing the effect of the accidental death of a deponent on a discovery dispute); *accord Yovino v. Rizo*, 139 S. Ct. 706, 710 (2019) (per curiam) (vacating a post-humous judicial opinion because "federal judges are appointed for life, not for eternity"). And the basis for the monetary sanction—"that counsel knew or should have known" from the district court's "prior rulings" that the objections were "meritless"—can no longer stand. *Compare* ROA.12779, *with Abbott*, 68 F.4th at 240 (reversing the district court's prior rulings in their entirety).[12]

The most appropriate remedy in this case would be to vacate the district court's order in its entirety and remand for reconsideration in the light of Mr. Vera's death

---

[12] To be clear, appellants do not concede that sanctions were ever appropriate: the attorney in question was aware of the court's prior rulings, but he was also aware that they had been *stayed* and thus were not in effect. ROA.10492.

and *Abbott*. After all, the Court reviews a district court's discovery orders for abuse of discretion. *Smith*, 896 F.3d at 369. The district court exercised that discretion here on the understanding that Plaintiffs wanted to ask Mr. Vera about communications he had with legislators, and that they needed Mr. Vera's copies of these documents to "adequately" do so. ROA.12564-65. Acting on the understanding that such an inquiry was entirely proper because legislative communications with non-legislators fell outside the scope of the privilege, the district court treated the two requests as inextricably intertwined and granted them as such. *See* ROA.12779 (directing Plaintiffs to serve a subpoena directly on Mr. Vera and Mr. Vera to be re-deposed). Now the legal basis for the ruling—that Plaintiffs are entitled to ask Mr. Vera about his communications with legislators—and the factual predicate—that Mr. Vera is available to answer such questions—are both gone. Under such circumstances, "the public interest is impeded, rather than furthered" by allowing whatever is left of the district court's order to remain in place. *FFRF*, 58 F.4th at 837. The better course is to vacate and allow Plaintiffs to explain—and the district court to decide—in the first instance what additional documents they are entitled to.

## III. Plaintiffs' Discovery Requests as to Documents and Emails Between Mr. Vera and Legislators Are Barred by Legislative Privilege.

If the Court chooses not to vacate the district court's order in its entirety, it should reverse the district court's conclusions on the merits, which can only be used to create an end run around the Court's ruling in *Abbott* by allowing Plaintiffs to access documents from Mr. Vera's estate that the LULAC Plaintiffs were unable to obtain from the state legislators themselves. The district court's order compelled

"Mr. Vera and the HCRP [to] produce all documents responsive to the two requests for production." ROA.12779. In doing so, the district court noted that it had already ruled that (1) the privilege had not properly been invoked because a legislator "is the only person able to assert [legislative] privilege," and (2) "the privilege can be waived if data or documents are shared with anyone outside the legislator/staff relationship." ROA.12776 n.4. Neither holding survives *Abbott*.

## A. Counsel for the state defendants properly preserved the legislative privilege.

The district court held that legislative privilege was not properly preserved in this case based on its previous holding that the privilege may only be asserted by legislators or their staff. ROA.1277 n.4. That holding was never proper as the court's ruling upon which it relied was not in effect at the time of Mr. Vera's deposition. ROA.10492. It is also demonstrably wrong under *Abbott* and more general principles regarding how privileges are raised.

**1.** To start, as discussed above (at Part I.B) and explained in *Abbott*, the legislative privilege is designed to protect the "public good" by allowing "lawmakers to focus on their jobs rather than on motions practice in lawsuits." *Abbott*, 68 F.4th at 237. The purpose of legislative privilege is to attract quality lawmakers to office with the promise of being unhindered by "the cost and inconvenience and distractions of a trial." *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951). The common-law roots of the legislative privilege stretch back to the English "Parliamentary struggles of the Sixteenth and Seventeenth Centuries," *id.* at 372, in particular the "conflict between the [House of] Commons and the Tudor and Stuart monarchs," *United*

*States v. Johnson*, 383 U.S. 169, 178 (1966). At the same time, however, courts recognize that to serve that purpose, the privilege must extend to those who assist in "the modern legislative process." *Gravel v. United States*, 408 U.S. 606, 616 (1972). The complexity of the modern world makes it impossible for legislators "to perform their legislative tasks without the help of aides and assistants." *Id.* Accordingly, rather than adopt an "unacceptably narrow view" that legislative privilege is confined to legislators themselves, the Supreme Court has instead described the privilege as having the "fundamental purpose of freeing the legislator from executive and judicial oversight that realistically threatens to control his conduct as a legislator." *Id.* at 618.

The legislative privilege is thus "'not limited to the casting of a vote on a resolution or bill; it covers *all* aspects of the legislative process.'" *Harkins*, 67 F.4th at 687 (emphasis added) (quoting *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007)). So, for example, as the Eleventh Circuit recognized, the privilege "covers both governors' and legislators' actions in the proposal, formulation, and passage of legislation." *See In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015). Indeed, *Abbott* took care to explain that "advice that [the legislators] solicited from the office of the Secretary of State" falls within the scope of legislative privilege. 68 F.4th at 236. That holding makes sense: legislators cannot be experts on all issues governed by all statutes, and it is prudent for legislators to solicit input from constituents and knowledgeable office holders to fine-tune legislation as it is being drafted. That such conversations can be held in confidence allows legislators to best discharge their duties. *See Abbott*, 68 F.4th at 237.

**2.** Applying those principles here, state executive officials with roles in the legislative process share the legislative privilege, as does the State itself. State officials "undoubtedly share an interest in minimizing the 'distraction' of 'divert[ing] their time, energy, and attention from their legislative tasks to defend the litigation.'" *See Lee*, 908 F.3d at 1187 (quoting *Eastland v. U. S. Servicemen's Fund*, 421 U.S. 491, 503, (1975)). And this Court has already held that these state defendants were a part of that legislative process. *See Abbott*, 68 F.4th at 236. For good reason: the Secretary of State, who might fairly be described as the primary defendant in these actions,[13] is Texas's chief election officer and serves as an information repository for how elections are run. Tex. Elec. Code §§ 31.003, .004. Similarly, the Attorney General is the State's lawyer and is authorized to dispense advice regarding the current meaning of the Election Code. Tex. Const. art. IV, § 22 *see also* Tex. Gov't Code §§ 402.010, .021, .042-043.

When those officials provide information to legislators, both benefit from "the breathing room necessary to make these choices in the public's interest." *See E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011). In a sense, there was privity of process between the state defendants and the third-party legislators, allowing both to assert the same privilege because both share in that privilege. *Cf. Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768

---

[13] For example, in defending the jurisdiction of the district court, Plaintiffs have spent the most energy defending the Court's jurisdiction over the Secretary. Brief of Plaintiffs-Appellees at 8-9, 18-40, 49-53, *La Union del Publeo Entero v. Nelson*, No. 22-50775 (5th Cir. Feb. 13, 2023).

F.2d 719, 721 (5th Cir. 1985) (explaining that attorney-client privilege is not waived "if a privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication."). Moreover, the legislative privilege would be meaningless if Plaintiffs could obtain evidence from the Secretary or the Attorney General through questions forbidden of the Legislature. *Contra Abbott*, 68 F.4th at 236 (emphasizing that the privilege is "necessarily broad").

That privity of process extended to Mr. Vera, and because the state defendants had an interest in the privilege, it was properly preserved at Mr. Vera's deposition. Mr. Vera was another non-legislator "brought . . . into the process" by legislators and their staff. *Abbott*, 68 F.4th at 237. The state defendants were represented by OAG attorneys at Mr. Vera's deposition, ROA.12640, and at the hearing on the motion, ROA.13187. At Mr. Vera's deposition, an attorney for the state defendants raised multiple objections based on legislative privilege. ROA.12640, 12647-48, 12656. Critically, the state defendants were invoking the privilege over the legislative process surrounding S.B. 1. Mr. Vera testified that the staff of state legislators drafting S.B. 1 sent him emails containing proposed language for the bill and requesting his comments for improvement. ROA.12655. The state defendants accordingly had a right to invoke the privilege below and preserve the issue for appeal.

**3.**   Courts apply similar rules when it comes to who can invoke other common-law privileges. For example, it is black-letter law that the attorney-client privilege is a personal right of the client; this is why a client has been long understood to have the ability to appeal an order requiring an attorney to reveal client confidences. *See*

*In re Air Crash at Belle Harbor, New York on November 12, 2001*, 490 F.3d 99, 106 (2d Cir. 2007) (discussing the so-called *Perlman* exception); *In re Grand Jury Proceedings in Matter of Fine*, 641 F.2d 199, 201-03 (5th Cir. 1981) (discussing the so-called *Perlman* exception). Thus, when a court speaks about the attorney-client privilege being "personal" to the client, it is typically speaking of who "owns" and thus can waive the privilege in the event of a dispute among individuals who might typically be in privity with each other. *Cf. United States v. Campbell*, 73 F.3d 44, 46 (5th Cir. 1996) (per curiam) (discussing who has authority to waive privilege on behalf of a partnership). The courts do *not* mean that the privilege has to be invoked by the client. To the contrary, "it is universally accepted that the attorney-client privilege may be raised by the attorney," *Fisher v. United States*, 425 U.S. 391, 402 n.8 (1976) (citing *inter alia* C. McCormick, Evidence s 92, p.193, s 94, p. 197 (2d ed. 1972)); *see also, e.g.*, *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) (citing *United States v. Smith*, 454 F.3d 707, 713 (7th Cir. 2006)). That is sensible because the purpose of the privilege is to encourage communications between two parties. *Upjohn Co. v. United States*, 449 U.S. 383, 394-99 (1981). It would be meaningless if the communication is privileged if sought from one party to that communication, but subject to discovery if sought from the other. *See In re Auclair*, 961 F.2d 65, 70 (5th Cir. 1992) (finding reversible error when the district court failed to extend attorney-client privilege to all participants in a joint meeting).

So it is the same with the legislative privilege. When a court describes the legislative privilege as "personal" to an individual legislator, what the court means is that it "may be waived or asserted by each individual legislator." *Marylanders for Fair*

*Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 298 (D. Md. Oct. 1992). Put another way: the Texas Legislature has 181 members, and disagreements among them are not infrequent. But a waiver by one member of the Legislature does *not* necessarily waive the privilege of another. *See United States v. Craig*, 528 F.2d 773, 780 (7th Cir. 1976), *on reh'g*, 537 F.2d 957 (7th Cir. 1976). And one member cannot force the other to keep information privileged. *Schaefer*, 144 F.R.D. at 298. That does not necessarily mean that if a committee of the House were to meet in closed session, every legislator must individually invoke the privilege for the privilege to be maintained.

4.    The district court's rule to the contrary would have troubling consequences. Most notably, if the privilege could be invoked only by certain members of the legislative process, then it would no longer be the rule that the legislative privilege applies "whether or not the legislators themselves have been sued." *Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181. This Court expressly held in *Abbott* that the legislative privilege shields from discovery  privileged information even when the legislators are non-parties. 68 F.4th at 232, 240. Indeed, due to various immunity principles, legislators will *generally* be non-parties to constitutional challenges of state statutes. *See, e.g.*, *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021). But as non-parties, legislators have fewer procedural tools available to them in trial court to protect the privilege—for example, third-party legislators cannot move for a new trial to correct the admission of privileged information. *Abbott*, 68 F.4th at 233.

Nor will non-party legislators generally be on notice of the need to preserve the privilege. If Senator Bettencourt and Representative Cain were required to personally attend every deposition that *might* touch a privileged matter (or at a minimum,

obtain counsel to attend every such deposition), then they would have no time to do the job that voters sent them to office to do, and the entire point of the privilege would be defeated. Instead, they would be left spending the bulk of their time determining where they or their counsel would need to be on any given day to assert the privilege in any number of lawsuits. This would be destructive to the legislative process. After all, "[a] litigant does not have to name members or their staffs as parties to a suit in order to distract them from their legislative work. Discovery procedures can prove just as intrusive." *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988).

In sum, the upshot of the district court's rule is that litigants seeking privileged information from non-party legislators have an easy end-run around the privilege—depose, or seek documents from, non-legislators (including state officials) and then inquire into all communications that those individuals had with legislators. The district court did not identify any precedent from this Court or the Supreme Court supporting that counterintuitive outcome, and it flies directly in the face of this Court's instructions in *Abbott*.

## B. The legislative privilege shields communications between Mr. Vera and legislators regarding the enactment of S.B. 1.

Finally, once Plaintiffs' jurisdictional and procedural arguments are dispelled, the merits of this case represent a mirror image—if not a microcosm—of *Abbott*. The same analysis should apply regarding scope of the privilege, whether the privilege has been waived, and whether the privilege must yield. *Abbott*, 68 F. 4th at 235. Mr. Vera's "documents, including but not limited to communications, talking points,

and memoranda" were "sent to or exchanged with the [same] Texas Legislature regarding" the same bills, namely "SB 1, SB 7, HB 3, or HB 6," ROA.12774. Thus, the outcome should be the same: the Court should hold they are subject to the legislative privilege.

**1.** On the issue of scope, the Court in *Abbott* concluded that "[s]tate lawmakers can invoke legislative privilege to protect actions that occurred within 'the sphere of legitimate legislative activity' or within 'the regular course of the legislative process.'" 68 F.4th at 235 (quoting *Tenney*, 341 U.S. at 376, and *United States v. Helstoski*, 442 U.S. 477, 489 (1979)). It "is not limited to the casting of a vote on a resolution or bill; it covers all aspects of the legislative process," including even "communications with third parties, such as private communications with advocacy groups." *Id.* at 235-36.

Here, Mr. Vera volunteered to be chair of the Harris County Republican Party Ballot Security Committee. ROA.12641. In that position, he regularly provided Republican representatives from Harris County "with lists of items in the election code that need[ed] to be addressed," and testified before the Legislature on bills that addressed items upon those lists. ROA.12642-43. For years (and until his death), Mr. Vera advocated various positions on ballot security—including before Governor Abbott called on the Legislature to consider S.B. 1. *See* ROA.12650. Even if Mr. Vera's communications were not directly at issue in *Abbott* (and they were), this kind of party leadership and special-interest advocacy placed Mr. Vera in the same category as "partisans, political interest groups, [and] constituents." *See Abbott*, 68 F.4th at 236 (quoting *Almonte*, 478 F.3d at 107). And "communications with advocacy

groups," as this Court held in *Abbott*, "are protected by legislative privilege." *Id.* (quoting *Harkins*, 67 F.4th at 687).

Further, Mr. Vera's emails here "discuss issues that bear" on the same "potential legislation" as those of Mr. Vera's emails that were at issue in *Abbott*—S.B. 1. *See id.* at 236 (quoting *Almonte*, 478 F.3d at 107). Mr. Vera testified that his emails with legislators provided feedback on the proposed provisions of S.B. 1. ROA.12659. Some of his emails provided Senators with suggested language to include in S.B. 1. Indeed, many of these correspondences were *initiated* by legislative staff requesting comments on draft language for the bills that eventually became S.B. 1. *See* ROA.12655. Accordingly, there is little doubt that Mr. Vera's emails fall within the "necessarily broad" scope of legislative privilege just as they did in *Abbott*, 68 F.4th at 236.

**2.**    As to the question of waiver, *Abbott* held that legislators do not "waive the legislative privilege when they communicate[] with parties outside the legislature, such as party leaders and lobbyists." *Id.* at 236-37. The "privilege covers 'legislators' actions in the proposal, formulation, and passage of legislation.'" *Id.* at 236 (quoting *Hubbard*, 803 F.3d at 1308). And an "exception for communications 'outside the legislature' would swallow the rule almost whole, because '[m]eeting with "interest" groups . . . is a part and parcel of the modern legislative procedures through which legislators receive information possibly bearing on the legislation they are to consider.'" *Id.* at 236 (quoting *Bruce v. Riddle*, 631 F.2d 272, 280 (4th Cir. 1980)).

As in *Abbott*, the legislators' communications with Mr. Vera did not waive the privilege. The district court incorporated its prior reasoning to hold "that the

privilege can be waived if data or documents are shared with anyone outside the legislator/staff relationship." ROA.12776 n.4. As explained above, this was the very reasoning and very holding that this Court reversed in *Abbott*. Indeed, this Court categorically rejected the argument that discussions with special-interest advocates waived the privilege "as an indirect attack on the privilege's scope." *Abbott*, 68 F.4th at 236. Mr. Vera's own testimony demonstrates that while drafting S.B. 1, the Legislature quite literally "brought third parties *into* the process," *id.* at 237, by sending Mr. Vera emails asking him "to comment on . . . sections of the bill," ROA.12655. This *private* communication between Mr. Vera as a public-interest advocate shows that legislators did not *publicly* reveal the documents. *Abbott*, 68 F.4th at 237 ("The very fact that Plaintiffs need discovery to access these documents shows that they have not been shared publicly."). Public revelation is the only form of waiver this Court endorsed in *Abbott*. *See id.* Accordingly, the privilege has not been waived.

**3.** Finally, as to the matter of when the legislative privilege must yield, this Court recognized that the Supreme Court has held that the privilege must give way to discovery in only "extraordinary instances" "where important federal interests are at stake, as in the enforcement of federal criminal statutes." *Id.* at 237-38 (quoting *United States v. Gillock*, 445 U.S. 360, 373 (1980)). But the Supreme Court has also "drawn the line at civil actions," and that has held true "even when constitutional rights are at stake" and "[e]ven for allegations involving racial animus or retaliation for the exercise of First Amendment rights," *id.* at 238 (citing *Gillock*, 445 U.S. at 373, *Tenney*, 341 U.S. at 377, and *Bogan v. Scott-Harris*, 523 U.S. 44 (1998)). Although the Court acknowledged that legislative immunity is qualified, the Court held that

legislative immunity does not yield in civil cases brought under 42 U.S.C. § 1983 merely because the plaintiffs allege suppression of voting rights. *See id.* at 240.

This case is no more an "'extraordinary instance[]' in which the legislative privilege must 'yield[].'" *Id.* at 237. The cases involve different plaintiffs, but a side-by-side comparison of the LULAC Plaintiffs' complaint with Plaintiffs' operative complaint shows that the claims overlap substantially. That is, after all, why they were consolidated. For example, Plaintiffs alleged that S.B. 1 violates the First and Fourteenth Amendments because it unduly burdens the right to vote under the Supreme Court's *Anderson-Burdick* balancing test. ROA.6689-92. The LULAC Plaintiffs raised a similar claim. ROA.6611-14. Plaintiffs allege that S.B. 1 was a law "enacted with a racially discriminatory purpose" in violation of section 2 of the Voting Rights Act ("VRA"), 52 U.S.C. § 10301(a), and the Fourteenth and Fifteenth Amendments. ROA.6692-97. The LULAC Plaintiffs likewise alleged a violation of section 2 of the VRA. ROA.6609-10. And both Plaintiffs here, ROA.6698-99, and the LULAC Plaintiffs, ROA.6617-18, alleged violations of section 208 of the VRA.

This Court carefully considered the substance of the LULAC Plaintiffs' claims and found that the legislative privilege should not yield in the face of those claims. *Abbott*, 68 F.4th at 238-39. Accordingly, Plaintiffs have not, and cannot, offer any reason to probe legislative intent that were not already rejected in *Abbott*.

## Conclusion

The Court should vacate the district court's order compelling a renewed deposition of Mr. Vera and the production of documents in facilitation thereof. To the extent that any portion of the order survives Mr. Vera, the Court should reverse.

Respectfully submitted.

John Scott
Provisional Attorney General

Brent Webster
First Assistant Attorney General

/s/ Lanora C. Pettit
Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

Michael R. Abrams
William F. Cole
Assistant Solicitors General

Justin W. Manchester
Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Third-Party Appellants Senator Paul Bettencourt and Representative Briscoe Cain

## CERTIFICATE OF SERVICE

On June 20, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Lanora C. Pettit
Lanora C. Pettit

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 11,769 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Lanora C. Pettit
Lanora C. Pettit