# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 23-50201

LA UNION DEL PUEBLO ENTERO; FRIENDSHIP-WEST BAPTIST
CHURCH; SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT;
TEXAS IMPACT; MEXICAN AMERICAN BAR ASSOCIATION OF TEXAS;
TEXAS HISPANICS ORGANIZED FOR POLITICAL EDUCATION;
JOLT ACTION; WILLIAM C. VELASQUEZ INSTITUTE; JAMES LEWIN;
FIEL HOUSTON, INCORPORATED,

*Plaintiffs-Appellees,*

– v. –

GREGORY W. ABBOTT, in his Official Capacity as Governor of Texas, *et al.*,

– v. –

SENATOR PAUL BETTENCOURT; REPRESENTATIVE BRISCOE CAIN,

*Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION

## BRIEF FOR PLAINTIFFS-APPELLEES

ELIZABETH Y. RYAN
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
(214) 746-7700

SEAN MORALES-DOYLE
LEAH TULIN
BRENNAN CENTER FOR JUSTICE
  AT NYU LAW
120 Broadway, Suite 1750
New York, New York 10271
(646) 295-8310

ZACHARY D. TRIPP
ALLISON D. HERZIG
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000

AARON J. CURTIS
HEYLEE BERNSTEIN
CHARLES GEHNRICH
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Plaintiffs-Appellees Friendship-West Baptist Church,
Texas Impact, and James Lewin*

*(For Continuation of Appearances See Inside Cover)*

MICHAEL C. KEATS
REBECCA L. MARTIN
JASON KANTERMAN
FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP
One New York Plaza
New York, NY 10004
(212) 589-8000

NINA PERALES
FÁTIMA L. MENÉNDEZ
JULIA R. LONGORIA
KENNETH PARRENO
MEXICAN AMERICAN LEGAL DEFENSE
   AND EDUCATION FUND
110 Broadway, Suite 300
San Antonio, Texas 78205
(210) 224-5476

*Attorneys for Plaintiffs-Appellees La Union del Pueblo Entero, Southwest Voter Registration Education Project, Mexican American Bar Association of Texas, Texas Hispanics Organized for Political Action, JOLT Action, William C. Velasquez Institute, and FIEL Houston, Incorporated*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1)      Plaintiffs-Appellees:

La Unión del Pueblo Entero
Friendship-West Baptist Church
Southwest Voter Registration Education Project
Texas Impact
Mexican American Bar Association of Texas
Texas Hispanics Organized for Political Action
JOLT Action
William C. Velasquez Institute
James Lewin
FIEL Houston, Inc.

2)      Appellants:

Senator Paul Bettencourt
Representative Briscoe Cain

3)      Counsel for Plaintiffs-Appellees La Unión del Pueblo Entero; Southwest Voter Registration Education Project; Mexican American Bar Association of Texas; Texas Hispanics Organized for Political Action; JOLT Action; William C. Velasquez Institute; and FIEL Houston, Inc.:

Nina Perales

Fátima L. Menéndez
Julia R. Longoria
Kenneth Parreno
Mexican American Legal Defense & Educational Fund

Michael C. Keats
Rebecca L. Martin
Jason S. Kanterman
Fried, Frank, Harris, Shriver & Jacobson LLP

4)      Counsel for Plaintiffs-Appellees Friendship-West Baptist Church;
Texas Impact; and James Lewin:

Sean Morales-Doyle
Leah Tulin
Andrew B. Garber
Eliza Sweren-Becker
Jasleen K. Singh
Patrick A. Berry
Robyn Sanders
Brennan Center for Justice at NYU Law School

Zachary D. Tripp
Paul R. Genender
Elizabeth Y. Ryan
Aaron J. Curtis
Alexander P. Cohen
Heylee Bernstein
Charles Gehnrich
Allison D. Herzig
Weil, Gotshal & Manges LLP

5)      Counsel for Appellants:

John Scott
Lanora C. Pettit
Brent Webster
Michael R. Abrams

William F. Cole
Justin W. Manchester
Office of the Attorney General of Texas

/s/ Zachary D. Tripp
Zachary D. Tripp
*Counsel for Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs respectfully request oral argument. This appeal presents nuanced questions concerning whether this Court has jurisdiction to hear an appeal brought by legislators who did not participate in the proceedings below and whether the legislative privilege applies to documents in the hands of private parties who are not part of the Legislature.

# TABLE OF CONTENTS

Introduction ................................................................................................ 1

Jurisdiction ................................................................................................. 4

Statement of Issues..................................................................................... 4

Statement of the Case ................................................................................ 4

    A.  Factual Background ....................................................................... 4

        1.  Texas held a "safe, free and fair" election in 2020 ................ 4

        2.  Texas enacted S.B. 1 based on unsubstantiated claims of
            voter fraud ....................................................................... 6

    B.  Procedural Background................................................................. 7

        1.  The separate legislative privilege appeal ............................. 8

        2.  The Harris County Republican Party intervened ................ 8

        3.  Plaintiffs' first motion to compel the Party to produce
            documents........................................................................ 9

        4.  Alan Vera's deposition ........................................................ 10

        5.  Plaintiffs' second motion to compel the Party to produce
            documents and testimony, the district court's order, and
            subsequent developments ...................................................... 11

Summary of the Argument ....................................................................... 14

Argument.................................................................................................. 19

  I.  The Court Lacks Jurisdiction Over the Legislators' Appeal .......... 19

    A.  The Legislators Cannot Bring This Appeal Because They
        Are Not Parties and Did Not Participate Below........................ 19

    B.  The Court Lacks Jurisdiction Because the District Court
        Has Not Issued an Appealable Final Order............................... 28

    C.  The Court Lacks Jurisdiction Over Communications in
        Which the Legislators Did Not Participate ................................ 36

    D.  A Live Controversy Remains Concerning Whether the Party
        Must Produce Documents .......................................................... 37

II.  The District Court Properly Ordered the Party to Produce the Documents ............................................................................ 39

    A.  The Legislators Forfeited Any Argument that the Documents Were Privileged.......................................................... 39

    B.  The Legislative Privilege Does Not Protect Documents in the Possession and Control of Private Parties Outside the Legislature ..................................................................................... 44

Conclusion......................................................................................... 52

Certificate of Service...................................................................... 54

Certificate of Compliance ............................................................. 55

# TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*ACORN v. County of Nassau,*
No. CV 05-2301-JFB-WDW, 2007 WL 2815810 (E.D.N.Y. Sept. 25, 2007) ............................................................ 40

*Am. Trucking Ass'ns v. Alviti,*
14 F.4th 76 (1st Cir. 2021) ....................................... 28, 30, 45

*Atlanta & St. A.B. Ry. Co. v. Barnes,*
95 F.2d 273 (5th Cir. 1938) ................................................ 25

*Baldus v. Brennan,*
No. 11-CV-562, 2011 WL 6122542 (E.D. Wis. Dec. 8, 2011) ............... 50

*Bayard v. Lombard,*
9 How. 530 (1850) ........................................................... 19

*Bethune-Hill v. Va. State Bd. of Elections,*
114 F. Supp. 3d 323 (E.D. Va. 2015) ..................................... 40

*Bowles v. Russell,*
551 U.S. 205 (2007) .................................................. 22, 26

*Branch v. Phillips Petroleum Co.,*
638 F.2d 873 (5th Cir. 1981) ......................................... 24, 35

*Carver v. Liberty Mut. Ins. Co.,*
277 F.2d 105 (5th Cir. 1960) ............................................. 25

*Castillo v. Cameron County,*
238 F.3d 339 (5th Cir. 2001) ..................................... 14, 20, 21, 28

*Cates v. LTV Aerospace Corp.,*
480 F.2d 620 (5th Cir. 1973) ............................................. 24

*CBE Grp., Inc. v. Lexington L. Firm,*
993 F.3d 346 (5th Cir. 2021) ............................................. 42

*Cohen v. Beneficial Indus. Loan Corp.,*
337 U.S. 541 (1949) .............................................. 29, 30, 31, 33

*Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections,*
No. 11-C-5065, 2011 WL 4837508 (N.D. Ill. Oct. 12, 2011) ............... 50

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.,*
704 F.3d 413 (5th Cir. 2013) ............................................. 37

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994) ................................................................ 29

*E.E.O.C. v. La. Off. of Cmty. Servs.*,
47 F.3d 1438 (5th Cir. 1995) ............................................ 20, 32

*Eastland v. U.S. Servicemen's Fund*,
421 U.S. 491 (1975) ................................................................ 47

*Edwards v. City of Houston*,
78 F.3d 983 (5th Cir. 1996) (en banc) ...................... 14, 19, 28

*United States ex rel. Eisenstein v. City of New York*,
556 U.S. 928 (2009) ................................................................ 19

*Erb v. All. Cap. Mgmt., L.P.*,
423 F.3d 647 (7th Cir. 2005) ................................................ 26

*Favors v. Cuomo*,
285 F.R.D. 187 (E.D.N.Y. 2012) ...................................... 40, 50

*Gilby v. Hughes*,
471 F. Supp. 3d 763 (W.D. Tex. 2020) .................................. 40

*Gill v. Monroe County Dep't of Soc. Servs.*,
873 F.2d 647 (2d Cir.1989) .................................................... 26

*Gravel v. United States*,
408 U.S. 606 (1972) ...................................................... 40, 43, 47

*In re Hubbard*,
803 F.3d 1298 (11th Cir. 2015) ...................................... 32, 47

*Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish
Gov't*, 849 F.3d 615 (5th Cir. 2017) .................................. 46, 52

Judgment, *Turtle Mountain Band of Chippewa Indians v.
N.D. Legis. Assembly*, No. 23-1597, 2023 WL 3839469, at
*1 (8th Cir. Apr. 3, 2023) ...................................................... 30

*La Unión del Pueblo Entero v. Abbott*,
68 F.4th 228 (5th Cir. 2023) .......................................... *passim*

*League of United Latin Am. Citizens v. Abbott*,
No. 3:21-CV-259-DCG-JES-JVB, 2022 WL 3233406 (W.D.
Tex. Aug. 10, 2022) ................................................................ 40

*League of Women Voters of Fla., Inc. v. Lee*,
340 F.R.D. 446 (N.D. Fla. 2021) .................................. *passim*

*League of Women Voters of Mich. v. Johnson,*
No. 17-14148, 2018 WL 2335805 (E.D. Mich. May 23,
2018) ........................................................................................ 50

*Lee v. City of Los Angeles,*
908 F.3d 1175 (9th Cir. 2018) ............................................... 41

*Leonard v. Martin,*
38 F.4th 481 (5th Cir. 2022) ................................................. 34

*Louisiana v. Jack,*
244 U.S. 397 (1917) .......................................................... 19, 22

*Marino v. Ortiz,*
484 U.S. 301 (1988) .................................................... 19, 20, 22

*Marylanders for Fair Representation, Inc. v. Schaefer,*
144 F.R.D. 292 (D. Md. 1992) ......................................... 36, 40

*Mohawk Indus., Inc. v. Carpenter,*
558 U.S. 100 (2009) ..................................................... *passim*

*Montano v. Texas,*
867 F.3d 540 (5th Cir. 2017) ............................................ 3, 24

*In re Motor Fuel Temperature Sales Pracs., Litig.,*
641 F.3d 470 (10th Cir. 2011) ............................................... 30

*Ohio A. Philip Randolph Inst. v. Larose,*
761 F. App'x 506 (6th Cir. 2019) ........................................... 30

*Perez v. Perry,*
No. 5:11-CV-360-OLG-JES-XR, 2014 WL 106927 (W.D.
Tex. Jan. 8, 2014) ................................................... 40, 46, 52

*Rodriguez v. Pataki,*
280 F. Supp. 2d 89 (S.D.N.Y. 2003), *aff'd*, 293 F. Supp. 2d
302 (S.D.N.Y. 2003) .............................................................. 50

*Rollins v. Home Depot USA,*
8 F.4th 393 (5th Cir. 2021) ................................................... 23

*Smith v. Town of Clarkton,*
682 F.2d 1055 (4th Cir. 1982) ............................................... 51

*Texas v. United States,*
679 F. App'x 320 (5th Cir. 2017) ........................................... 20

*Texas v. United States*,
  No. 16-11534 (5th Cir. Jan. 30, 2017) .................................................. 20

*TitleMax of Tex., Inc. v. City of Dallas*,
  No. 3:21-CV-1040-S-BN, 2022 WL 326566 (N.D. Tex. Feb.
  3, 2022) ................................................................................................. 40

*United States v. Brewster*,
  408 U.S. 501 (1972)............................................................................... 42

*United States v. Gillock*,
  445 U.S. 360 (1980)............................................................................... 51

*United States v. Miller*,
  425 U.S. 435 (1976)...............................................................28, 44, 45

*United States v. Weiss*,
  No. 19-CR-805-SCS, 2023 WL 3763529 (N.D. Ill. June 1,
  2023), *aff'd*, No. 23-2096, 2023 WL 3750603 (7th Cir. June
  1, 2023) ................................................................................................. 40

*Whole Woman's Health v. Smith*,
  896 F.3d 362 (5th Cir. 2018), *as revised* (July 17, 2018) ...................... 31

**Statutes**

28 U.S.C. § 1291 .......................................................................................21, 28

28 U.S.C. § 1331 ............................................................................................... 4

28 U.S.C. § 1343(a)........................................................................................... 4

**Other Authorities**

26A Charles Alan Wright & Arthur R. Miller, Federal
  Practice & Procedure § 5675 (3d ed. Apr. 2022 update) ...................... 43

David Lynch, *Bexar County's Early Voting Locations Staying
  Open Later This Week* (Oct. 27, 2020),
  https://tinyurl.com/34skwveb................................................................. 5

Fed. R. App. P. 3(c)(1)(A) ......................................................................19, 20

Fed. R. App. P. 4(a)(1)(A).............................................................................. 26

*Governor Abbott Delivers 2021 State of the State Address*,
  OFFICE OF THE TEXAS GOVERNOR (Feb. 1, 2021),
  https://gov.texas.gov/news/post/governor-abbott-delivers-
  2021-state-of-the-state-address ............................................................. 6

*Governor Abbott Holds Press Conference on Election Integrity Legislation*, OFFICE OF THE TEXAS GOVERNOR (Mar. 15, 2021), https://gov.texas.gov/news/post/governor-abbott-holds-press-confer-ence-on-election-integrity-legislation ...................... 6

*Governor Abbott Signs Election Integrity Legislation into Law*, OFFICE OF THE TEXAS GOVERNOR (Sept. 7, 2021), https://tinyurl.com/dsftdsh4 .................................................... 7

Jolie McCullough, *Nearly 127,000 Harris County Drive-Thru Votes Appear Safe After Federal Judge Rejects GOP-Led Texas Lawsuit*, TEX. TRIB. (Nov. 2, 2020), https://ti-nyurl.com/4rtawh3m ................................................. 5

Michelle Ye Hee Lee et al., *Early Voting Begins in Texas with High Turnout, Despite New Legal Developments on Voting Access*, WASH. POST (Oct. 14, 2020), https://ti-nyurl.com/2f6eac7v ...................................................... 5

*Secretary Hughs Commends Texas Voters Following November 3rd General Election*, TEXAS SECRETARY OF STATE (Nov. 30, 2020), https://tinyurl.com/4pv8e3rd ............................................... 4, 5

Taylor Goldenstein, *Fact Checking Texas Lawmaker's Claim of 400 Voter Fraud 'Cases,'* HOUSTON CHRONICLE (Apr. 12, 2021) (updated Apr. 13, 2021), https://www.houstonchroni-cle.com/poli-tics/texas/article/Fact-checking-Texas-law-maker-s-claim-of-400-16095858.php........................................ 6

# INTRODUCTION

In what is now the fifth interlocutory appeal in the consolidated cases challenging Texas Senate Bill 1, Texas State Senator Paul Bettencourt and Representative Briscoe Cain (the "Legislators") ask this Court to reverse a discovery order that is not directed at them. The Legislators had numerous opportunities to intervene in the proceedings below and protect their interests. But they did not participate in the district court proceedings in any way. They are not parties. They did not seek to intervene or object to Plaintiffs' requests for documents or attend the deposition of Alan Vera, a political party volunteer who lobbied the Texas Legislature. Likewise, the Legislators did not respond to or even appear at the two hearings on Plaintiffs' motions to compel. After entirely failing to participate in the district court, the Legislators ask this Court in the first instance to intercede on their behalf and overturn the district court's decision compelling the production of documents in the possession of private parties. The Court should not entertain the Legislators' extraordinary requests.

The main thrust of the Legislators' arguments is that Plaintiffs are attempting to make an "end run" around another appeal—*La Unión del Pueblo Entero v. Abbott*—which raised various legislative privilege issues

and was decided earlier this year. 68 F.4th 228 (5th Cir. 2023).[1] That assertion has no merit. *Abbott* involved a different set of facts than those at issue here. In particular, the plaintiffs in that case—the LULAC plaintiffs—served third-party subpoenas directly on the legislators seeking documents in the legislators' possession. And the legislators actively objected to those subpoenas based on legislative privilege. This Court held that the legislative privilege applied because requiring the legislators to respond to those subpoenas would undermine the privilege's purpose of protecting legislators from the cost, inconvenience, and distraction of litigation so that they can instead focus on legislating.

Here, in stark contrast, Plaintiffs avoided burdening the Legislators. Instead, Plaintiffs served document requests on the Harris County Republican Party (the "Party"), which intentionally inserted itself into this litigation by intervening. After the Party refused to produce relevant documents and testimony based on the legislative privilege, Plaintiffs used the procedure designed for precisely this purpose—moving to compel production by the withholding party. The Legislators did not appear or respond in opposition. And the district court held that the legislative privilege did

---

[1] This Court has referred to the prior interlocutory appeal as *LULAC Texas v. Hughes*. The Legislators' brief and Westlaw both refer to that appeal as *La Unión del Pueblo Entero v. Abbott*. To minimize confusion, Plaintiffs refer to that appeal as *Abbott*. That appeal involved different plaintiffs and additional legislators who have not appealed here.

not shield production of the Party's responsive documents and granted the motion to compel. It's as simple as that.

The Legislators had ample opportunity to assert the legislative privilege in the district court, just as they asserted it earlier in the consolidated cases in response to the subpoena at issue in *Abbott*. They could have objected to Plaintiffs' document requests, responded to the motions to compel, attended Mr. Vera's deposition and objected to his testimony, attended the hearings, or moved the district court for reconsideration. But the Legislators did not participate in any way. Instead, they seek appellate relief in the first instance. But an appeal is never the first step. "[A] court of appeals sits as a court of review, not of first view." *Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017) (citation omitted).

Because the Legislators did not participate in the proceedings below, they lack standing to bring this appeal. Further, because the legislative privilege is a personal one, the Legislators lack standing to assert the privilege over communications in which they did not participate. And even if the Legislators have standing, the district court correctly held—consistent with other courts throughout the country that have addressed the issue—that the Legislators forfeited the privilege by failing to object and that the legislative privilege does not cover documents in the possession of an outsider like Mr. Vera.

The Court should dismiss this interlocutory appeal for lack of jurisdiction, or at the very least, affirm the district court's order.

## JURISDICTION

The district court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). For the reasons stated in Section I below, this Court lacks appellate jurisdiction over the Legislators' appeal.

## STATEMENT OF ISSUES

1. Whether this Court lacks jurisdiction over the Legislators' appeal where the Legislators did not participate in the proceedings below.

2. Whether the legislative privilege extends to documents in the possession of private parties who are outside the Legislature.

## STATEMENT OF THE CASE

### A. Factual Background

#### 1. Texas held a "safe, free and fair" election in 2020

Texas's 2020 General Election was a "resounding success" despite unprecedented health threats and logistical obstacles posed by the COVID-19 pandemic. *Secretary Hughs Commends Texas Voters Following November 3rd General Election*, TEXAS SECRETARY OF STATE (Nov. 30, 2020), https://tinyurl.com/4pv8e3rd. Public officials and community groups throughout Texas worked to increase voter participation in the November 2020 General Election by making voting more accessible and educating

and encouraging voters to cast lawful ballots. Election officials in some counties also took additional steps to make voting more accessible for voters who might be hesitant to come to the polls during the global health crisis, including setting up outdoor and drive-through polling locations, keeping early voting locations open for extended hours, and establishing ballot drop-box sites.[2] As a result of these efforts, Texas achieved record voter turnout, including increased turnout among Latino, Asian-American, and Black voters. ROA.6647-50.

The Texas Secretary of State's office proclaimed that Texas had a "safe, free and fair election" in 2020. *Secretary Hughs Commends Texas Voters Following November 3rd General Election*, TEXAS SECRETARY OF STATE (Nov. 30, 2020), https://tinyurl.com/4pv8e3rd.

---

[2]    *See, e.g.,* David Lynch, *Bexar County's Early Voting Locations Staying Open Later This Week*, KENS5 (Oct. 27, 2020), https://tinyurl.com/34skwveb (discussing efforts to keep early voting locations open for extended hours); Jolie McCullough, *Nearly 127,000 Harris County Drive-Thru Votes Appear Safe After Federal Judge Rejects GOP-Led Texas Lawsuit*, TEX. TRIB. (Nov. 2, 2020), https://tinyurl.com/4rtawh3m (discussing efforts to make voting easier and increase the number of polling places); Michelle Ye Hee Lee et al., *Early Voting Begins in Texas with High Turnout, Despite New Legal Developments on Voting Access*, WASH. POST (Oct. 14, 2020), https://tinyurl.com/2f6eac7v (discussing ballot drop boxes).

## 2. Texas enacted S.B. 1 based on unsubstantiated claims of voter fraud

Despite these successes, Governor Greg Abbott and Attorney General Ken Paxton sought to cast doubt on the integrity of the 2020 election by launching investigations of voter fraud and announcing that "election integrity" would be an "emergency item" for the Texas Legislature's 2021 term.[3] The Governor and Attorney General took these steps despite the fact that there was no evidence of widespread voter fraud in the 2020 election and no evidence of a substantial risk of fraud in future elections in Texas. Indeed, as of April 2021, Attorney General Paxton's office was only pursuing one voter fraud case stemming from the 2020 election, out of more than 11,000,000 ballots cast, even though his office had spent 22,000 staff hours investigating voter fraud in 2020.[4]

The Texas Legislature subsequently enacted Senate Bill 1 or "S.B. 1," which Governor Abbott signed into law on September 7, 2021. *Governor*

---

[3]     *See, e.g., Governor Abbott Holds Press Conference on Election Integrity Legislation*, OFFICE OF THE TEXAS GOVERNOR (Mar. 15, 2021), https://gov.texas.gov/news/post/governor-abbott-holds-press-confer-ence-on-election-integrity-legislation; *Governor Abbott Delivers 2021 State of the State Address*, OFFICE OF THE TEXAS GOVERNOR (Feb. 1, 2021), https://gov.texas.gov/news/post/governor-abbott-delivers-2021-state-of-the-state-address.

[4]     *See* Taylor Goldenstein, *Fact Checking Texas Lawmaker's Claim of 400 Voter Fraud 'Cases,'* HOUSTON CHRONICLE (Apr. 12, 2021) (updated Apr. 13, 2021), https://www.houstonchronicle.com/poli-tics/texas/article/Fact-checking-Texas-lawmaker-s-claim-of-400-16095858.php.

*Abbott Signs Election Integrity Legislation into Law*, OFFICE OF THE TEXAS GOVERNOR (Sept. 7, 2021), https://tinyurl.com/dsftdsh4. S.B. 1 significantly limits access to voting in Texas and makes it far more difficult for voters to exercise their constitutional rights.

### B. Procedural Background

Multiple plaintiffs groups, including Plaintiffs in this case,[5] and the United States timely filed five separate cases challenging various provisions of S.B. 1 to vindicate their rights and the rights of Texas voters. The cases have since been consolidated. Plaintiffs brought claims under the U.S. Constitution, the Voting Rights Act of 1965, and the Americans with Disabilities Act against the State of Texas, the Secretary of State of Texas, the Attorney General of Texas (collectively, the "State Defendants"), and several county law enforcement and election officials charged with executing S.B. 1. ROA.6623-24. Plaintiffs did not bring claims against any member of the Texas Legislature. ROA.6623.

---

[5] Plaintiffs in this case are La Unión del Pueblo Entero ("LUPE"), Friendship-West Baptist Church, Southwest Voter Registration Education Project, Texas Impact, Mexican American Bar Association of Texas, Texas Hispanics Organized for Political Education, JOLT Action, William C. Velasquez Institute, FIEL Houston Inc., and James Lewin. ROA.6623.

### 1. The separate legislative privilege appeal

In December 2021, another group of plaintiffs—the LULAC plain-tiffs[6]—served third-party document subpoenas on four state legislators, including Senator Bettencourt and Representative Cain, who withheld documents based on assertions of the legislative privilege. ROA.9128-29, 10419-22. The LULAC plaintiffs moved to compel, and the Texas Office of the Attorney General ("OAG") appeared on the state legislators' behalf, objecting and asserting the legislative privilege. The district court granted the motion, ROA.10419-22, and the state legislators appealed. This Court later reversed and held that the state legislators "did not *waive* the privilege by communicating with individuals who are outside the Legislature" and that the "privilege [did] not *yield*." *Abbott*, 68 F.4th at 235.

### 2. The Harris County Republican Party intervened

Meanwhile, on May 13, 2022, the district court granted a renewed motion to intervene from the Party. ROA.110, 12774. Two months later, in July 2022, Plaintiffs sent document requests to the Party seeking, among other things, "[a]ll documents, including but not limited to commu-nications, talking points, and memoranda, sent to or exchanged with the Texas Legislature regarding SB 1." ROA.10935, 10943-49, 12561 & n.4.

---

[6] The LULAC plaintiffs include LULAC Texas, Texas AFT, Texas Alli-ance for Retired Americans, and Vote Latino.

### 3. Plaintiffs' first motion to compel the Party to produce documents

After the Party failed to produce any documents in response, Plaintiffs moved to compel the Party to produce documents in November 2022. ROA.10918. On November 14, 2022, the district court held a hearing on that motion, and ruled that the legislative privilege did not shield production of the Party's communications with legislators. ROA.13101-02, 13111. The Party advised the district court that it would produce all documents responsive to Plaintiffs' request for documents exchanged with the Texas Legislature regarding S.B. 1 without objection and without any assertion of privileges. ROA.10943, 12774-75 & nn.2-3, 13107, 13128-29. The Legislators did not object, respond to the motion to compel, or appear at the November 2022 hearing. ROA.118-20, 13097. The State Defendants—represented by OAG—appeared and offered no objection to the production of these documents. ROA.13128. On December 1, 2022, the Party produced 61 documents responsive to these requests. ROA.12561.

On December 9, 2022, the district court memorialized its order from the hearing, directing the Party to, among other things, "produce documents responsive to Plaintiffs' requests for production, subject to the objections sustained at the hearing" and the Party's "assertions of privilege." ROA.12148.

### 4. Alan Vera's deposition

On February 27, 2023, Plaintiffs deposed Alan Vera, a witness identified by the Party as a relevant custodian whose email account may contain documents sent to or exchanged with the Texas Legislature. ROA.12562-63, 12718. Mr. Vera was a volunteer for the Party who served as chairman of the Party's Ballot Security Committee. ROA.12723. He was neither a legislator nor an employee of the Legislature. Attorneys from OAG appeared at the deposition on behalf of the State Defendants. ROA.12720. Although OAG also represented the Legislators in *Abbott* and is representing them in this appeal, OAG's appearance at Mr. Vera's deposition was not on the Legislators' behalf. ROA.12719.

Mr. Vera testified that he communicated extensively on behalf of the Party with legislators and legislative staff regarding S.B. 1 from June 2020 through September 2021. ROA.12726-27, 12737-39, 12742-47. According to Mr. Vera, those individuals included the Legislators as well as Representatives Jacey Jetton and Valoree Swanson (who are not appellants). ROA.12737, 12746-47. Mr. Vera explained, "I would get emails from State Rep Jacey Jetton, State Rep Valoree Swanson, Senator Bettencourt and his staff, and I think 90 percent of the emails I got requesting my point of view were those three people or their staffs." ROA.12746. Mr. Vera also testified that he met in person with legislators and legislative staff, provided them with "exhibits," and communicated with them by

phone and email. ROA.12727, 12737-39, 12743. Despite the Party's knowledge that Mr. Vera used his personal email account because he did not have a Party email account, the Party failed to search Mr. Vera's personal email address or computer for responsive documents. ROA.12777.

During Mr. Vera's deposition, neither a legislator, "nor any attorney representing a legislator," appeared or invoked the legislative privilege. ROA.12719, 13190-91. Instead, the OAG attorneys appearing on behalf of *only* the State Defendants objected based on the legislative privilege and instructed Mr. Vera not to answer questions regarding his communications with legislators. ROA.12719, 12726-27, 12738, 12747-48. Mr. Vera also self-censored his answers to questions calling for communications with legislators regarding S.B. 1. ROA.12727, 12741, 12747.

### 5. Plaintiffs' second motion to compel the Party to produce documents and testimony, the district court's order, and subsequent developments

On March 4, 2023, Plaintiffs moved again to compel and argued that the Party had not searched for and produced documents in Mr. Vera's personal email and computer. ROA.12577. Plaintiffs served the motion on the OAG, which was already representing the Legislators in *Abbott*. The OAG—on behalf of the State Defendants but *not* the Legislators—filed a response brief on March 7, 2023, arguing that "the information Plaintiffs seek falls within the scope of the legislative privilege." ROA.12695-97,

12700. The Party also filed a response arguing, among other things, that "Mr. Vera's personal work email account is not within the 'possession, custody, or control' of the Harris County Republican Party." ROA.12711.

On March 7, 2023, the district court held a hearing on Plaintiffs' motion. ROA.13184. Counsel from the OAG appeared, but only on behalf of the State Defendants, ROA.13187, and conceded that the Legislators did not have an attorney at Mr. Vera's deposition, ROA.13191. The district court explained that it had "already ruled on a number of occasions that the privilege is only applicable to a legislator and that the legislative privilege can be waived by third parties entering into that relationship." ROA.13191-92. Accordingly, the district court concluded that "there was no meritorious invocation of the legislative privilege" and ordered that Mr. Vera be re-deposed. ROA.13191-92. The State Defendants made an oral motion to stay, which the district court denied. ROA.13203. The district court also ordered the Party to search for responsive documents in Mr. Vera's personal email and computer. ROA.13206.

On March 9, 2023, the district court entered a written order memorializing its rulings at the March 7, 2023 hearing. ROA.12773, 12780-82. The district court again explained that "the legislative privilege belongs solely to a legislator, and he/she is the only person able to assert that privilege." ROA.12776 n.4. And because "no legislator actually asserted the

privilege during the deposition of Mr. Vera, who is neither a legislator nor a legislative staffer," the privilege was not properly raised. ROA.12779 n.6. The court also held that "the privilege can be waived if data or documents are shared with anyone outside the legislator/staff relationship," and "[t]hat is exactly what occurred here." ROA.12776 n.4. Thus, the court ordered the Party to produce responsive documents "located on Mr. Vera's personal computer and email account" because such documents were under the Party's "possession, custody, or control." ROA.12776-77, 12779. In addition, the court directed Plaintiffs to "serve a third-party subpoena under Rule 45 on Mr. Vera in connection with his re-deposition directing him to produce the documents." ROA.12779. But the court clarified that the order did "not relieve [the Party] from supplementing its production and producing responsive documents." ROA.12779.

On March 27, 2023, Senator Bettencourt and Representative Cain, participating in the matter for the first time, filed an emergency motion for a stay in this Court, requesting the Court stay the district court's March 9, 2023 order. ECF No. 10. Representatives Jetton and Swanson did not file a notice of appeal. The Legislators' appeal marked the *fifth* interlocutory appeal in these consolidated cases and came only months before the first phase of trial, which is scheduled for September 2023. This Court subsequently granted an administrative stay on April 7, 2023, ECF

No. 42, and granted the motion to stay in full on April 27, 2023, ECF No. 50.

On May 4, 2023, Mr. Vera suddenly and unexpectedly passed away. Blue Br. 18-19. Following Mr. Vera's death and this Court's decision in *Abbott*, counsel for the Legislators asked Plaintiffs if they would be willing to jointly move to vacate the district court's order "on the ground that any request to re-depose Mr. Vera (including any requests for documents to facilitate that deposition) were moot." Blue Br. 19. Plaintiffs declined this request, explaining that the *Abbott* decision is not controlling.

## SUMMARY OF THE ARGUMENT

I.  This Court lacks jurisdiction to hear this interlocutory appeal.

A.  The Legislators do not have standing to appeal. "[O]ne who is not a party to a lawsuit, or has not properly become a party, has no right to appeal a judgment entered in that suit." *Edwards v. City of Houston*, 78 F.3d 983, 993 (5th Cir. 1996) (en banc). This Court has recognized a narrow exception to that rule only when (1) a nonparty participated in the proceedings below, (2) the equities weigh in favor of hearing the appeal, and (3) the nonparty has a personal stake in the outcome. *Castillo v. Cameron County*, 238 F.3d 339, 349 (5th Cir. 2001). But the Legislators are not parties and the narrow exception does not apply because they cannot meet any of its requirements.

14

First, the Legislators did not participate in the district court proceedings. That alone is enough to foreclose appellate jurisdiction. Second, the equities do not weigh in favor of hearing the appeal because the Legislators sat on their rights by failing to participate, even though they had notice and every opportunity to do so. Moreover, Plaintiffs' discovery requests are directed to independent private parties, and impose no burden on the Legislators. Third, the Legislators lack a personal stake in the outcome of this appeal because the district court's discovery order imposed obligations only on the Party, not the Legislators, and did not subject the Legislators to sanctions for failure to comply. And the Legislators surrendered any cognizable interest they might have in the confidentiality of documents in the possession of private parties outside the Legislature when they shared those documents with those outsiders.

B.   The Court also lacks jurisdiction over this interlocutory appeal because the district court has not yet entered a final order. To the contrary, the district court proceedings are active and ongoing, with summary judgment motions pending and a trial currently scheduled to begin in less than two months' time.

This case also does not fit within the narrow judicially created exception for so-called "collateral orders." That "small" category of orders "includes only decisions that are conclusive, that resolve important questions

separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (citation omitted). All three factors must be satisfied. Under *Mohawk*, none are.

First, the order did not conclusively determine a disputed question with respect to the Legislators because it is merely a discovery order and it does not apply to them. Second, the district court's order did not resolve an important question completely separate from the merits of the action because the discovery requests do not imperil the interests the Court was concerned about in *Abbott*—namely, the Legislators' interests in avoiding the costs, inconveniences, and distractions of litigation. The Legislators were not subjected to any costs, inconveniences, or distractions at all because Plaintiffs sought discovery from the Party, not the Legislators. And there is no important interest in being able to appeal a discovery order without first objecting to it. Third, the Legislators cannot show that the district court's decision is effectively unreviewable on appeal from a final judgment. The Supreme Court has emphasized that courts can remedy the improper disclosure of privileged material by vacating an adverse judgment and remanding for a new trial.

C.  The Court also lacks jurisdiction over any challenge to the disclosure of the communications of other legislators who did not appeal and in

which Representative Cain and Senator Bettencourt did not participate. Because the legislative privilege necessarily belongs only to the legislator whose legislative act is involved, the Legislators lack standing to assert the privilege over communications between Mr. Vera and other legislators, which constitute some of the documents at issue. Those other legislators did not appeal. Therefore, this Court lacks jurisdiction to rule on whether the legislative privilege shields their communications from production.

D.   The Court should dismiss this appeal for lack of jurisdiction, but it is not moot. The documents that Plaintiffs have requested—and that the district court already ordered the Party to produce—may contain relevant evidence bearing on the Texas Legislature's intent in enacting S.B. 1. Mr. Vera's untimely passing is tragic but does not moot this appeal. Indeed, Plaintiffs requested these documents from the Party—and the district court ordered the Party to produce them—long before Mr. Vera's deposition, and Plaintiffs argued before the district court that the documents themselves are relevant to their claims. Plaintiffs' need for the documents remains irrespective of whether they can question Mr. Vera about them.

II.   On the merits, the district court did not err in ordering the production of the documents at issue.

A.   The Legislators did not move to quash or otherwise levy any objection in the district court, so the district court did not err in holding that

the objection was forfeited. And because the legislative privilege is a personal one, the Legislators cannot rely on the invocations of the privilege during the lower court proceedings by executive officials who took *no part* in the communications at issue.

B.   In any event, the privilege does not apply to documents in the possession of independent private parties who are outside the Legislature. The Legislators do not have possession or control over documents in the hands of private parties, and thus, the legislative privilege does not extend to those documents. Moreover, the legislative privilege serves to allow lawmakers to focus on their jobs without facing the burdens of responding to litigation. Plaintiffs' requests did not undermine that purpose because Plaintiffs sought documents and information from an independent private party outside of the Legislature and did not seek documents or information from the Legislators. Thus, the burden on the Legislators was zero. And finally, even if the privilege applied and was properly invoked, the privilege is qualified and still must yield to the important federal interests in avoiding racial discrimination in voting laws.

# ARGUMENT

## I. The Court Lacks Jurisdiction Over the Legislators' Appeal

### A. The Legislators Cannot Bring This Appeal Because They Are Not Parties and Did Not Participate Below

"It is well-settled that one who is not a party to a lawsuit, or has not properly become a party, has no right to appeal a judgment entered in that suit." *Edwards*, 78 F.3d at 993. As the Supreme Court put it more than a century ago, "it has long been the law as settled by this court that 'no person can bring a writ of error (an appeal is not different) to reverse a judgment who is not a party or privy to the record.'" *Louisiana v. Jack*, 244 U.S. 397, 402 (1917) (alteration in original) (quoting *Bayard v. Lombard*, 9 How. 530, 551 (1850)). Rather, to seek appellate relief, a party ordinarily must first "seek intervention" or move to quash. *Marino v. Ortiz*, 484 U.S. 301, 304 (1988); *see also United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) (explaining that "intervention is the requisite method for a nonparty to become a party to a lawsuit"). Federal Rule of Appellate Procedure 3(c) enshrines that rule, providing that a notice of appeal "must … specify *the party or parties* taking the appeal." Fed. R. App. P. 3(c)(1)(A) (emphasis added).

This Court has recognized a narrow exception to that rule: nonparties can appeal if, but only if, they "actually participated in the proceedings

below, the equities weigh in favor of hearing the appeal, and the nonparties have a personal stake in the outcome." *Castillo*, 238 F.3d at 349 (citation omitted). The Legislators fail to meet any of these criteria.[7]

1. The Legislators are not parties to this case. Nor did they intervene or move to intervene in the district court. Their notice of appeal in turn did not, and could not, specify "the party or parties taking the appeal," Fed. R. App. P. 3(c)(1)(A), because no "party" is taking the appeal. Even worse, the Legislators not only failed to object—they did not participate at all in the proceedings from which they seek to appeal. *See* ROA.13187-91. Indeed, they are not even a party to the relevant discovery order because it does not apply to them. *See id.* They thus cannot appeal: "A person who is not a party to the proceedings below generally cannot appeal the court's judgment," and no exception is warranted where the nonparty has not "pled, intervened or otherwise participated in the proceedings below." *E.E.O.C. v. La. Off. of Cmty. Servs.*, 47 F.3d 1438, 1442-43 (5th Cir. 1995).

---

[7] Relying on *Marino* and its progeny, OAG recently argued to this Court that an individual who is not a party cannot appeal. Plaintiffs-Appellees' Mot. to Dismiss Appeal of Dr. Rachel Tudor 3-6, 8, *Texas v. United States*, No. 16-11534 (5th Cir. Jan. 30, 2017). OAG emphasized that this Court lacked jurisdiction because the individual "did not participate in the proceedings" below, *id.* at 6, and the Court agreed, *Texas v. United States*, 679 F. App'x 320, 323-24 (5th Cir. 2017) (dismissing for lack of jurisdiction). Here, the Legislators did not participate below, and thus, this Court lacks jurisdiction for the reasons OAG itself articulated.

This case is readily distinguishable from *Castillo*, where the appellant was "an active participant in the [lower court] proceedings" and "brought the very motion that was denied in the order being appealed." 238 F.3d at 350. Here, in stark contrast, the Legislators did nothing. This case also diverges from *Abbott* and *Jackson Municipal Airport Authority v. Harkins*. For example, in *Harkins*, the Court held that "one who *unsuccessfully asserts* a governmental privilege may immediately appeal a discovery order where he is not a party to the lawsuit." 67 F.4th 678, 682-83 (5th Cir. 2023) (emphasis added and citation omitted); *see also Abbott*, 68 F.4th at 231-32 (legislators objected to the discovery requests in the lower court). And in both of those cases, the discovery orders were directed at the legislators themselves. *Harkins*, 67 F.4th at 682; *Abbott*, 68 F.4th at 232. Here, because the Legislators did not "unsuccessfully assert" the legislative privilege in the district court and the discovery order was not directed at them, they cannot appeal.

The Legislators "agree that 'the general rule' is 'that nonparties cannot appeal' a lower court's judgment." Blue Br. 26 (quoting *Castillo*, 238 F.3d at 349). They nevertheless argue that "the legislators need not be parties to the proceedings below to pursue this appeal." *Id.* at 25-26. But Section 1291 does not establish a different rule for state legislators than

for everybody else. Indeed, in *Louisiana v. Jack*, the Supreme Court applied the general rule to the State of Louisiana itself. 244 U.S. at 402. And in *Karcher v. May*, the Supreme Court applied that rule to "the former presiding officers of the New Jersey Legislature." 484 U.S. 72, 74, 77 (1987). Jurisdictional rules are just that—jurisdictional: They are "mandatory" and courts have "no authority to create equitable exceptions to jurisdictional requirements." *Bowles v. Russell*, 551 U.S. 205, 214 (2007). The proper path to defending important interests in a case is not for a court to bend the rules of appellate jurisdiction, but for the nonparties to "seek intervention" in the district court to defend their own interests. *Marino*, 484 U.S. at 304. At a minimum, they need to participate in some way.

Despite acknowledging that they did not participate in the discovery proceedings they are appealing, the Legislators argue that they "participated in the proceedings below by vigorously asserting legislative privilege when third-party subpoenas were served *on them*" in a separate dispute involving the LULAC plaintiffs. Blue Br. 26. But that does not help the Legislators. They are seeking to appeal an interlocutory discovery order under the collateral order doctrine, but the order they are appealing is not even directed at them. They are not a party to the proceedings from which they seek to appeal, and they did not participate in any way in the proceedings that led the district court to issue it. They cannot simultaneously

contend that the order is "completely separate" from the rest of the lawsuit, *Mohawk*, 558 U.S. at 604; Blue Br. 24, and yet still so intertwined with *different* orders on a *different* discovery dispute involving *different* document requests served by *different* plaintiffs that they can appeal despite having failed to participate in the actual proceedings at issue on appeal.

The Legislators further assert that this Court should overlook their failure to participate below because "they are represented by the same OAG attorneys who represent the state defendants," and "[t]hose attorneys objected to production of documents and testimony" on behalf of the State Defendants. Blue Br. 26. But as OAG conceded, "neither the legislator *nor any attorney representing the legislator* invoked the legislative privilege." ROA.13191 (emphasis added). Even worse, the Legislators were on notice and had multiple opportunities to participate, yet did not raise any objections. The Legislators' assertion that "OAG represents both the state defendants and the state legislators" is thus irrelevant. Blue Br. 15 n.8. It is undisputed that the Legislators did not object or otherwise participate below, ROA.13191, and they cannot begin their participation in a proceeding by objecting to the district court's order "for the first time on appeal," *see Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021). "[A] court

of appeals sits as a court of review, not of first view." *Montano*, 867 F.3d at 546 (citation omitted).

Moreover, the Legislators cite no authority for the proposition that legislators who played no role in the district court proceedings can bring an interlocutory appeal when *another* party unsuccessfully seeks to invoke the legislative privilege. Instead, the Legislators rely on cases where government actors personally received subpoenas, objected, and were forced to respond. Blue Br. 23-24 (citing *Abbott*, 68 F.4th at 231 ("plaintiffs sought discovery from individual, non-party state legislators"); *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 876-79 (5th Cir. 1981) (discussing a subpoena served "on the custodian of records for the Equal Employment Opportunity Commission"); *Cates v. LTV Aerospace Corp.*, 480 F.2d 620, 621 (5th Cir. 1973) (discussing a "subpoena directed to the Department of the Navy")). No subpoena or other judicial order was directed at the Legislators in the proceedings below. The discovery requests were served only on the Party.[8]

---

[8] The Legislators contend that the OAG attorney objections raised during Mr. Vera's deposition are "[c]onsistent with the privilege assertions that no one disputes were properly preserved in *Abbott*." Blue Br. 15. But in *Abbott*, the OAG attorneys objected "*on behalf of* the third-party legislators" and "the four *legislators filed objections*," *id.* at 8 (emphasis added), while here, "neither the legislator nor any attorney representing a legislator invoked the legislative privilege," ROA.13191.

2. The equities likewise weigh against allowing the Legislators to appeal. Equity aids the vigilant, not those who sleep on their rights. *See, e.g., Carver v. Liberty Mut. Ins. Co.*, 277 F.2d 105, 109 (5th Cir. 1960); *Atlanta & St. A.B. Ry. Co. v. Barnes*, 95 F.2d 273, 278 (5th Cir. 1938). The Legislators' failure to participate in the proceedings does not warrant equitable treatment because they had notice and every opportunity to do so. *See* ROA.13187-91. As they now acknowledge, the Legislators "are represented by the same OAG attorneys who represent the state defendants." Blue Br. 26. But those attorneys never objected to Plaintiffs' document requests or entered an appearance on behalf of the Legislators during Mr. Vera's deposition or during the hearings on the motions to compel—even though OAG attorneys appeared at both the deposition and the hearings on behalf of the State Defendants. ROA.13190-91.

In fact, the Legislators slept on their rights so long that they missed their opportunity to appeal the district court's order compelling the Party to produce the documents at issue. The district court's December 9, 2022 order—long before the March 9, 2023 order—directed the Party to produce its communications with legislators and addressed the unavailability of the legislative privilege. ROA.12142, 12148, 13101-02, 13111. Rule 4 requires, subject to exceptions not relevant here, that a party file a notice of

appeal "within 30 days after the judgement or order appealed from is entered." Fed. R. App. P. 4(a)(1)(A). That time limit is jurisdictional and "would be meaningless" if a party could sleep on its rights and then manufacture a second order after the thirty days had elapsed. *Erb v. All. Cap. Mgmt., L.P.*, 423 F.3d 647, 650 (7th Cir. 2005). "In such a case, the notice of appeal will be timely only if filed within 30 days of the entry of the original order." *Id.*; *see also Gill v. Monroe County Dep't of Soc. Servs.*, 873 F.2d 647, 648 (2d Cir.1989). And that same logic applies where, as here, a party has been ordered to respond fully to a document request, the party has violated that order, the district court issues a second order enforcing its first, and another party appeals. The untimely notice of appeal provides yet another freestanding basis to dismiss for lack of jurisdiction. *See Bowles*, 551 U.S. at 213.

Moreover, because the discovery requests were served on the Party, not the Legislators themselves, the requests did not "distract[] lawmakers from the job that voters sent them to do." *Abbott*, 68 F.4th at 233. Indeed, *Abbott* expressed concern that "[t]he privilege would be of little value if legislators could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader." 68 F.4th at 238 (citation omitted). Yet that concern is not implicated here. The Legislators were not subjected to any costs, inconveniences, or distractions in the district court

because Plaintiffs served discovery requests on the Party, not the Legislators, and the Legislators never objected.

The Legislators argue the equities weigh in their favor because "after production there would be no further point to the claim of privilege which would be irretrievably breached beyond the protection of an appellate court." Blue Br. 27 (citation omitted). But in *Mohawk Industries, Inc. v. Carpenter*, the Supreme Court explained that "postjudgment appeals generally suffice to protect the rights of litigants," and the fact that "a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment … has never sufficed" as a "justification for immediate appeal." 558 U.S. at 107, 109 (citation omitted); *see infra* Section I.B.

3. For similar reasons, the Legislators lack a personal stake in the outcome of this appeal. The order at issue in this appeal did not alter any rights or obligations of the Legislators. It did not require them to produce any documents, appear at any depositions, or take (or not take) any other actions. Rather, the district court ordered *the Party* to produce documents. ROA.12780-81. Moreover, because the district court's order was directed at the Party, rather than the Legislators, "failure to comply" with the order would not "result in sanctions against the legislators." *Abbott*, 68 F.4th at 233 (citation omitted). It would only result in sanctions against the Party.

The district court's order also did not burden the Legislators. It left them completely free from the "cost," "inconvenience," and "distractions" of litigation. *See Abbott*, 68 F.4th at 238.

The Legislators contend that they have a personal stake because "documents these legislators assert are protected by legislative privilege will be disclosed with no opportunity for appellate review." Blue Br. 28. But that risk "is simply [a] ramification of the fact that the information has already been given to a private third party" and is in that private party's possession. *Am. Trucking Ass'ns v. Alviti*, 14 F.4th 76, 86 (1st Cir. 2021). The Legislators surrendered whatever interest they might have in the confidentiality of these documents when they shared them with private parties who are not members or employees of the Legislature. *See id.*; *League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446, 454 & n.2 (N.D. Fla. 2021); *see also United States v. Miller*, 425 U.S. 435, 440, 443 (1976).

Accordingly, the Court should dismiss the Legislators' appeal because they are nonparties who lack standing to appeal. *See Edwards*, 78 F.3d at 993; *Castillo*, 238 F.3d at 349.

## B. The Court Lacks Jurisdiction Because the District Court Has Not Issued an Appealable Final Order

Even if the Legislators had standing to appeal, the Court would still lack jurisdiction. Congress has vested the federal courts of appeals with jurisdiction over "final decisions of the district courts." 28 U.S.C. § 1291.

"A final decision is typically one by which a district court disassociates itself from a case." *Mohawk*, 558 U.S. at 106 (cleaned up). It is undisputed that the district court has not yet issued such an order, as the trial court proceedings are ongoing.

Under the collateral order doctrine, however, the Supreme Court has recognized a "small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). To be appealable under *Cohen*, an order thus must "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) [be] effectively unreviewable on appeal" from a final judgment. *Abbott*, 68 F.4th at 232 (citations omitted). The Supreme Court has time and again stressed that the collateral order doctrine is a "narrow exception" that should "never be allowed to swallow the rule." *See, e.g., Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (quotation marks omitted).

In *Mohawk*, the Court reiterated its longstanding admonition to narrowly construe the doctrine, holding that interlocutory discovery orders re-

quiring the production of attorney-client privileged materials do not qualify as collateral orders and cannot be immediately appealed. 558 U.S. at 114. Indeed, the disclosure of privileged documents is insufficiently harmful to justify interlocutory review. *Id.* at 107-13. In the wake of *Mohawk*, appellate courts have routinely held that they lack jurisdiction over immediate appeals of discovery orders based on privilege objections, including the legislative privilege. *See, e.g.*, *Alviti*, 14 F.4th at 84, 90-91 (no appellate jurisdiction over interlocutory review of legislative privilege assertions by state officials); Judgment, *Turtle Mountain Band of Chippewa Indians v. N.D. Legis. Assembly*, No. 23-1597, 2023 WL 3839469, at *1 (8th Cir. Apr. 3, 2023) (dismissing a similar legislative privilege appeal for lack of jurisdiction); *In re Search of Elec. Commc'ns in the Acct. of chakafattah gmail.com at Internet Serv. Provider Google, Inc.*, 802 F.3d 516, 523-26 (3d Cir. 2015) (declining to expand the collateral order doctrine to orders denying motions to quash unexecuted search warrants over assertions of the Speech or Debate Clause privilege); *Ohio A. Philip Randolph Inst. v. Larose*, 761 F. App'x 506, 510-11 (6th Cir. 2019) (no appellate jurisdiction over interlocutory review of First Amendment associational privilege assertions); *In re Motor Fuel Temperature Sales Pracs., Litig.,* 641 F.3d 470, 482 (10th Cir. 2011) (same). Under *Mohawk*, the Legislators in this case likewise cannot satisfy the *Cohen* factors.

1.     With respect to the first *Cohen* condition, the district court's order is not conclusive as to the Legislators because it does not even apply to them and thus does not determine their rights or obligations at all. *See* ROA.12781. This case in turn is distinguishable from *Abbott* and *Harkins*. In those cases, the lower courts ordered the legislators themselves to produce documents, conclusively imposing legal obligations on the legislators, backed by the threat of sanctions. *Abbott*, 68 F.4th at 232; *Harkins*, 67 F.4th at 682-84; *see also Whole Woman's Health v. Smith*, 896 F.3d 362, 367 (5th Cir. 2018), *as revised* (July 17, 2018) ("There is no dispute that the district court's discovery order was conclusive *on TCCB*, such that failure to comply with it may result in sanctions *against TCCB or its witness*." (emphasis added)). Here, the district court did not order the Legislators to do anything—and did not threaten them with sanctions—because the discovery orders were directed at the Party, not the Legislators. ROA.12561 & nn. 4-5, 12781, 13192.

2.     Regarding the second *Cohen* condition, the question here is not sufficiently "important" to warrant an immediate appeal because "deferring review until final judgment" would not "so imperil[] the interest as to justify the cost of allowing immediate appeal of the entire class of relevant orders." *Mohawk*, 558 U.S. at 108. In *Abbott*, this Court reasoned that the legislative privilege "involve[d] important questions" that justified the

"cost of allowing immediate appeal" because "litigation itself distracts law-makers from the job that voters sent them to do" by subjecting them to the "cost and inconvenience and distractions of a trial." 68 F.4th at 233, 237-38 (citations omitted).[9] But those interests are inapplicable here.

First, the Legislators' failure to participate below sharply undercuts any claim to importance. There is no inherent importance in allowing a nonparty to begin their participation in a proceeding by filing a notice of appeal. Rather, the place to begin participation in a case is *in the district court*, by intervening, filing a motion to quash, or otherwise raising an objection. *See La. Off. of Cmty. Servs.*, 47 F.3d at 1442-43.

Second, the fact that the discovery orders are directed at private parties further undercuts any claim to importance. The Legislators were not distracted from the job voters sent them to the Legislature to do. They incurred no costs in connection with this dispute in the district court because they did not participate at all. Indeed, the Legislators did not receive

---

[9]      *See also In re Hubbard*, 803 F.3d 1298, 1310 (11th Cir. 2015) ("One of the privilege's principle purposes is to ensure lawmakers are allowed to focus on their public duties," and not "civil litigation" or "discovery requests" (citation omitted)); *League of Women Voters of Fla.*, 340 F.R.D. at 454 & n.2 (explaining that the "privilege serves to prevent parties from harassing legislators" but "because confidentiality is not the legislative privilege's animating concern, the privilege would not prevent Plaintiffs from asking the third parties with which the Legislators communicated about those communications").

subpoenas from Plaintiffs. ROA.12561. Plaintiffs served discovery requests on the Party, a named party to the litigation. ROA.12561, 12781. Thus, the Legislators are already free from the "deterrents" and "distraction" of litigation, without need for an interlocutory appeal. *Abbott*, 68 F.4th at 233, 237-38.

Third, in situations where subpoenas are not directed at legislators themselves, "deferring review until final judgment does not meaningfully reduce the *ex ante* incentives for full and frank consultations between" legislators and constituents any more than it would reduce "consultations between clients and counsel." *See Mohawk*, 558 U.S. at 109. Conversely, opening the door to this type of nonparty interlocutory appeal would cause exactly the problems the final-judgment rule is designed to prevent: it would "disrupt the orderly progress of the litigation" and "substantially reduce the district court's ability to control the discovery process." *Mohawk*, 558 U.S. at 112-13 (citation omitted). A district court cannot control the discovery process if a nonparty can obtain appellate supervision of discovery even though the nonparty never participated or levied any objection.

3.    With respect to the third *Cohen* condition, the district court's order is not "effectively unreviewable on appeal from the final judgment in the underlying action." *Mohawk*, 558 U.S. at 106 (citation omitted). "[T]his

court and every other circuit court hold that the collateral order doctrine does not provide jurisdiction over a nonparty's appeal from a discovery order because nonparties have alternative avenues for appellate review." *Leonard v. Martin*, 38 F.4th 481, 487 (5th Cir. 2022). The Legislators could have intervened, objected, and "request[ed] that the district court certify a § 1292(b) appeal or, in extraordinary cases, [sought] a writ of mandamus." *Id.* at 488 (citing *Mohawk*, 558 U.S. at 110-11). And if they chose to intervene, the Legislators could challenge the district court's discovery orders post-judgment in the appellate courts. *See Mohawk*, 558 U.S. at 109; *Leonard*, 38 F.4th at 487-88 (denying appellate review of order denying third party's discovery motion). But they did not intervene or object.

The Legislators argue that the district court's order is "effectively unreviewable on appeal from a final judgement" because the privilege "would be destroyed if it were not vindicated before trial," and "if information is wrongly disclosed, no appellate remedy can retract [the] privileged information." Blue Br. 24-25 (citations omitted). But the Supreme Court in *Mohawk* rejected the same argument about the cat being out of the bag. 558 U.S. at 108-09. Instead, *Mohawk* instructs that "postjudgment appeals generally suffice to protect the rights of litigants," and explains that the fact that "a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment ... has

never sufficed" as a "justification for immediate appeal." *Id.* at 107, 109 (citation omitted).

To be sure, *Abbott* expressed concern that "a new trial cannot retract privileged information that has been shared into the public domain." *Abbott*, 68 F.4th at 233. But unlike in *Abbott*, this case involves a request to obtain information *from a private party* outside the Legislature that is already in possession and control of that information. The Legislators accordingly already let the proverbial cat out of the bag before this litigation began. A final-judgment appeal, by contrast, can fully remedy the impact of introducing such information into evidence. And that is the mechanism that the Supreme Court itself has explained is sufficient: "Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." *Mohawk*, 558 U.S. at 109. Indeed, even before *Mohawk*, this Court acknowledged that the rationale for the theory that nonparties could bring an immediate appeal to challenge adverse disclosure orders raising a governmental privilege "may be unsound." *See Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 877-78 (5th Cir. 1981).

This Court accordingly should not stretch the atextual "collateral order" doctrine beyond its statutory moorings to allow an interlocutory appeal by nonparties that failed even to participate in the proceedings below and are now essentially using an appeal as a belated effort to quash discovery requests that were not even directed at them. The proper place to file a motion to quash is in the district court, not a circuit court.

## C. The Court Lacks Jurisdiction Over Communications in Which the Legislators Did Not Participate

The Legislators cannot challenge the disclosure of communications in which they took no part. Mr. Vera testified that he not only communicated with the Legislators, but also separately communicated with Representatives Jetton and Swanson and their staff—none of whom objected to Plaintiffs' document requests or filed an appeal here. ROA.12746. As the Legislators concede, the privilege "may be waived or asserted by each individual legislator." Blue Br. 37-38 (quoting *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 298 (D. Md. 1992)). Indeed, the privilege necessarily belongs only to the legislator whose legislative act is involved in the evidence at issue. *See infra* Section II.A. The Legislators therefore lack standing to assert the legislative privilege with respect to any communications in which they did not participate, including communications between Mr. Vera and other legislators or their staff. *See id.* This Court in

turn lacks jurisdiction to review the district court's ruling that the Party must produce those documents.

### D. A Live Controversy Remains Concerning Whether the Party Must Produce Documents

As discussed above, the Court should dismiss this appeal for lack of jurisdiction. But this case is not moot. The Legislators argue that "Mr. Vera's unexpected death moots the controversy that led to the district court's order compelling his testimony." Blue Br. 30. Of course Plaintiffs are not seeking to depose Mr. Vera after his death. But Plaintiffs did not merely move to compel Mr. Vera's testimony. They also moved to compel the Party "to conduct a search for and produce all relevant documents," "including documents in Mr. Vera's personal email address and personal computer." ROA.12577. Plaintiffs are still entitled to that relief.

A controversy only becomes moot when "intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013). Here, the district court ordered the Party "to search for and produce documents responsive to the requests for production at issue located on Vera's personal computer and email account." ROA. 12777-78. And the Party has not yet complied with that order. Thus, the courts are still capable of providing meaningful relief.

The Legislators argue that the district court ordered the Party to produce the documents in question only "on the understanding that Plaintiffs wanted to ask Mr. Vera about communications he had with legislators." Blue Br. 32. But Plaintiffs did not request the Party's communications with legislators solely so that they could use them during Mr. Vera's deposition. Rather, Plaintiffs sought those documents because they might shed light on the Legislature's motivations for passing S.B. 1. Thus, over seven months before the deposition, Plaintiffs served the Party with document requests seeking "[a]ll documents, including but not limited to communications, … sent to or exchanged with the Texas Legislature regarding SB 1." ROA.10943. When the Party failed to respond to the requests, Plaintiffs moved to compel, and the district court ordered the Party to produce responsive documents in December 2022. ROA.10918, 12148, 13107, 13128-29.

Plaintiffs did not learn about the additional responsive documents in Mr. Vera's personal email account until his deposition months later. ROA.12562-64. And once they did, Plaintiffs met and conferred with the Party and ultimately moved to compel the Party to produce the documents, emphasizing that the documents were highly relevant to their claims under the Voting Rights Act and U.S. Constitution. ROA.12569-71,

12575-77. The district court granted that motion because, "[w]ithout a review of Mr. Vera's computer and email account, counsel for [the Party] was unable to accurately represent that [the Party's] production was complete under Rule 26(g)." ROA. 12777-78. Therefore, a live controversy existed before Mr. Vera's deposition, and remains following his passing, regarding whether the Party must produce documents that they withheld.[10]

## II. The District Court Properly Ordered the Party to Produce the Documents

Even if the Court had jurisdiction, the Legislators' appeal would still fail on the merits because (a) the Legislators forfeited their legislative privilege objections and (b) the legislative privilege does not apply to documents in the hands of private parties outside the Legislature.

### A. The Legislators Forfeited Any Argument that the Documents Were Privileged

The Legislators forfeited any argument that the documents at issue are covered by the legislative privilege when they failed to object below. The district court correctly held that "there was no meritorious invocation of the legislative privilege" because "neither the legislator nor any attorney

---

[10]   The Legislators also assert that "the basis for the monetary sanction" the district court imposed on the State Defendants for improperly raising legislative privilege objections "can no longer stand." Blue Br. 31. But the Legislators lack standing to challenge monetary sanctions—including attorneys' fees associated with the motion to compel—that the district court imposed on other parties.

representing a legislator invoked the legislative privilege." ROA.13191.

Moreover, as the district court correctly explained, counsel for the State

Defendants could not raise objections for the Legislators because "the leg-

islative privilege belongs solely to a legislator, and he/she is the only per-

son able to assert that privilege." ROA.12776 n.4. Indeed, the Supreme

Court has emphasized that the legislative privilege is "invocable only by

the [legislator] or by the aide on the [legislator's] behalf." *Gravel v. United*

*States*, 408 U.S. 606, 622 (1972). Numerous courts in this Circuit—and

across the country—have agreed that only legislators can assert the legis-

lative privilege.[11] And the Legislators themselves acknowledge that the

privilege "may be waived *or asserted* by each individual legislator." Blue

Br. 37-38 (emphasis added) (quoting *Schaefer*, 144 F.R.D. at 298).

---

[11] *See Perez v. Perry*, No. 5:11-CV-360-OLG-JES-XR, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014) ("[N]either the Governor, nor the Secretary of State or the State of Texas has standing to assert the legislative privi- lege on behalf of any legislator or staff member that may be deposed."); *League of United Latin Am. Citizens v. Abbott*, No. 3:21-CV-259-DCG-JES- JVB, 2022 WL 3233406, at *1 (W.D. Tex. Aug. 10, 2022) (similar); *Gilby v. Hughes*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020) (similar); *TitleMax of Tex., Inc. v. City of Dallas*, No. 3:21-CV-1040-S-BN, 2022 WL 326566, at *6 (N.D. Tex. Feb. 3, 2022) (similar); *United States v. Weiss*, No. 19-CR- 805-SCS, 2023 WL 3763529, at *11 (N.D. Ill. June 1, 2023) (similar), *aff'd*, No. 23-2096, 2023 WL 3750603 (7th Cir. June 1, 2023); *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 344 (E.D. Va. 2015) (similar); *Favors v. Cuomo*, 285 F.R.D. 187, 211 (E.D.N.Y. 2012) (similar); *ACORN v. County of Nassau*, No. CV 05-2301-JFB-WDW, 2007 WL 2815810, at *4 (E.D.N.Y. Sept. 25, 2007) (similar); *Schaefer*, 144 F.R.D. at 298 (similar).

Nevertheless, the Legislators assert a novel theory that the State Defendants can assert the privilege with respect to communications in which the State Defendants took no part because the State Defendants supposedly "share an interest in minimizing the 'distraction' of 'divert[ing] their time, energy, and attention from their legislative tasks to defend the litigation.'" Blue Br. 35 (quoting *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018)). But again, OAG acknowledged in the district court that "neither the legislator nor any attorney representing a legislator invoked the legislative privilege" in connection with these documents. ROA.13191. Moreover, the case the Legislators rely on does not support the sweeping proposition that other state officials can assert the legislative privilege. It merely stands for the principle that "state and local legislators"—as opposed to just federal legislators—"may invoke legislative privilege." *City of Los Angeles*, 908 F.3d at 1187.

Indeed, the Legislators are unable to identify any authority indicating that members of the *executive branch* are entitled to assert the privilege. To the contrary, *Abbott* speaks only of "[s]tate lawmakers" being able to "invoke legislative privilege." 68 F.4th at 235, 237. That emphasis on the *state lawmaker* makes sense. After all, permitting only a legislator or a legislative aide to invoke the privilege aligns with the purposes of the privilege that the *Abbott* court articulated: "buttress[ing] the separation of

powers." *Id.* at 237. Allowing the State Defendants, instead of the Legislators, to assert the legislative privilege would impermissibly expand—not limit—the executive branch's power and defy the "check[s] and balances" that *Abbott* emphasized the privilege protects. *Id.*; *see also United States v. Brewster*, 408 U.S. 501, 517 (1972) ("The authors of our Constitution were well aware of the history of both the need for the privilege and the abuses that could flow from too sweeping safeguards.").

The Legislators note that, with the attorney-client privilege, the attorney can raise the privilege on the client's behalf; the client need not do so personally. Blue Br. 36-38. But an attorney is able to raise the attorney-client privilege on a client's behalf because *the attorney is the client's agent. See CBE Grp., Inc. v. Lexington L. Firm*, 993 F.3d 346, 350 (5th Cir. 2021). There was no agency relationship here. The Legislators do not assert that the State Defendants represented them in this dispute, and counsel for the State Defendants made clear to the district court that they did not represent the Legislators in either Mr. Vera's deposition or the discovery dispute between Plaintiffs and the Party. ROA.13190-91. The State Defendants accordingly could not raise the objection on behalf of the Legislators.

Even worse, the Legislators attempt to rely on the State Defendants' assertion of the legislative privilege even though the State Defendants

were *not* party to the communications at issue. Those communications occurred between Mr. Vera and legislators or legislative aides, including the Legislators here. ROA.12746. The legislative privilege is personal, *see Gravel*, 408 U.S. at 621-22, and thus "the privilege" necessarily "belongs to the legislator whose legislative act is involved in the evidence," 26A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 5675 (3d ed. Apr. 2022 update). Even if the State Defendants could invoke the legislative privilege under some circumstances—and they cannot—they may not do so for communications in which they did not participate. The State Defendants were not participants in the communications, and thus could not have preserved the privilege here.

The Legislators contend that "they would have no time to do the job that voters sent them to office to do" if they "were required to personally attend every deposition that *might* touch a privileged matter." Blue Br. 38-39. But that argument presupposes that they have a privilege over documents in possession and control of an outside party. They do not.

Moreover, this was not a discovery request that *might* touch a privileged matter. It was a request for production of documents reflecting communications between the Party and legislators. ROA.10943. The Legislators had notice, and if they wanted, they could have raised objections to the discovery requests *before* the deadline for production, or during the

briefing and argument on Plaintiffs' November 2022 motion to compel. The Legislators also could have attended the deposition of Alan Vera or could have attended the hearing on the second motion to compel *after* the deposition. The Legislators did none of those things. Indeed, even after the district court entered its discovery orders, they could have filed motions to reconsider and asked for forgiveness for failing to raise their objection contemporaneously. Instead, with actual notice of the district court's orders, their first step was to appeal after the second order. Thus, they forfeited any argument that the documents were protected by the legislative privilege by failing to raise any such objection in the district court.

**B. The Legislative Privilege Does Not Protect Documents in the Possession and Control of Private Parties Outside the Legislature**

1. The legislative privilege does not apply to documents in the possession and control of independent parties who are outside of the Legislature. *See League of Women Voters of Fla.*, 340 F.R.D. at 454 n.2. Indeed, this case presents clear parallels to the third-party doctrine. The Legislators "can assert neither ownership nor possession" of the documents that they shared with the Party. *United States v. Miller*, 425 U.S. 435, 440 (1976). Instead, the documents at issue are in the possession of the Party. A legislator "takes the risk, in revealing his affairs to another, that the

information will be conveyed by that person" to others, "even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Id.* at 443.

Once the Legislators shared documents and information with private parties outside the Legislature, those documents were no longer within the Legislators' possession and control. *See Miller*, 425 U.S. at 440; *League of Women Voters of Fla.*, 340 F.R.D. at 454 n.2. Indeed, the concerns animating the legislative privilege "are less pointed when the discovery is aimed in the first instance at a private party." *Alviti*, 14 F.4th at 85. The Legislators would have no way of stopping the Party from sending their communications to news outlets or posting them on the internet. For the same reason, the Legislators should not be able to stop the Party from producing those documents in a court of law. The non-applicability of the legislative privilege to documents in the hands of private parties "is simply [a] ramification of the fact that the information has already been given to a private third party." *Id.* at 86; *accord League of Women Voters of Fla.*, 340 F.R.D. at 454 n.2.

In *Abbott*, the Court stated that "some communications with third parties, such as private communications with advocacy groups, are protected by legislative privilege." 68 F.4th at 236 (citation omitted). The

Court ultimately held that *legislators* could not be compelled to produce documents that they shared with private parties. *Id.* at 236-37.[12] But this case involves a fundamentally different question: whether legislators can prevent *private parties* from producing documents that are in the private parties' possession, after legislators willingly relinquished control over these documents. *Abbott* did not address that question. And the answer to that question is no.

The legislative privilege does not extend to every document in the hands of a lobbyist, political party, or other member of the public so long

---

[12] Plaintiffs respectfully disagree with the reasoning in *Harkins* and *Abbott*. Regarding scope, the Court improperly conflated the legislative privilege with the legislative immunity, contradicting the Court's earlier analysis in *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish Gov't*, 849 F.3d 615, 624 (5th Cir. 2017). Regarding waiver, as courts in this Circuit had unanimously held prior to *Harkins* and *Abbott*, "[t]o the extent … that any legislator, legislative aide, or staff member had conversations or communications with any outsider (*e.g.* party representatives, non-legislators, or non-legislative staff), any privilege is waived as to the contents of those specific communications." *Perez*, 2014 WL 106927, at *2. That is so even where communications with private parties are purportedly made as part of the legislative process. *See* ROA.12573. And the *Abbott* court imposed an improperly stringent standard for when the privilege should yield, especially in light of this Court's prior emphasis that the privilege is qualified and must be strictly construed. *See Jefferson Cmty. Health Care Ctrs.*, 849 F.3d at 624. Consistent with the balancing conducted by district courts in this Circuit before *Abbott*, the privilege—even if it applied—should have yielded in that case. *See* ROA.12575-77. Plaintiffs respectfully preserve these issues for further appeal.

as it has crossed a legislator's desk at some point. Yet that is precisely the broad rule the Legislators propose when they argue that "Mr. Vera's emails fall within the necessarily broad scope of legislative privilege" because he "testified before the Legislature on bills," "advocated various positions on ballot security," "provided feedback on the proposed provisions of S.B. 1," and "suggested language to include in S.B. 1." Blue Br. 40-41 (citation omitted). As the Supreme Court has explained, the privilege only extends to "integral part[s] of the deliberative and communicative processes" and "only when necessary to prevent indirect impairment of such deliberations." *Gravel*, 408 U.S. at 625 (citation omitted). The scope that the Legislators propose goes far beyond those limitations. It is a legislative privilege, not a lobbyist privilege.

Moreover, the Legislators' overly broad view of the privilege is unsupported by its underlying purposes. As this Court explained in *Abbott*, the privilege serves to "allow[] lawmakers to focus on their jobs rather than on motions practice in lawsuits." 68 F.4th at 237.[13] But *Abbott*'s concern that

---

[13] *See also Hubbard*, 803 F.3d at 1310 ("One of the privilege's principle [sic] purposes is to ensure that lawmakers are allowed to focus on their public duties." (citation omitted)); *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975) ("[A] private civil action, whether for an injunction or damages, creates a distraction and forces Members to divert their time, energy, and attention from their legislative tasks to defend the litigation.").

"[t]he privilege would be of little value if legislators could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader" is not present here. 68 F.4th at 238 (citation omitted). As discussed above, the Legislators were not subjected to any costs, inconveniences, or distractions in the proceedings below because Plaintiffs served discovery requests on the Party, and the Legislators did not object to those requests. *See supra* Section I.A. "[B]ecause confidentiality is not the legislative privilege's animating concern," the privilege does not "prevent Plaintiffs from asking the third parties with which the Legislators communicated about those communications." *League of Women Voters of Fla.*, 340 F.R.D. at 454 n.2.

In fact, *Abbott* itself left open the possibility that the analysis might be different for documents in the hands of a private party outside the Legislature. The Court emphasized that the plaintiffs were not entitled to obtain "hand-written notes that reveal [one of the legislators'] mental impressions," even though "the notes appear on a document that he received from a third party." *Abbott*, 68 F.4th at 236. The implication is that the legislative privilege covers documents *in the legislators' possession* that reveal their mental impressions. But the Court did not indicate that the original document the third party sent—before the legislator added his

notes—would be privileged if the plaintiffs sought the document from the third party. *See id.*[14]

2. An analysis of waiver gets to the same place. In *Abbott*, the Court held that "[t]he legislators did not waive the legislative privilege when they communicated with parties outside the legislature, such as party leaders and lobbyists." 68 F.4th at 236-37 (citation omitted). But again, *Abbott* did not involve documents in the possession and control of a private party outside the Legislature. Rather, it concluded only that, under certain circumstances, *legislators* did not waive their ability to object to the production of documents currently in their possession and control based on the legislative privilege, despite having previously shared those documents with third parties. *Id.*

Here, Plaintiffs seek the documents from private parties *outside* the Legislature. Numerous courts have consistently held that legislators waive the legislative privilege when they share documents with parties

---

[14] Before the district court, Plaintiffs also asserted that fact-based information used in the decision-making process was not subject to the legislative privilege and must be disclosed, ROA.12574, but the district court did not reach that issue, ROA.12776 n.4. Since then, a privilege log has not been served to allow Plaintiffs to review the Legislators' privilege assertions. *See Harkins*, 67 F.4th at 687. Should the Court conclude that the district court erred in requiring disclosure, Plaintiffs respectfully request that the Court remand to the district court to consider, in the first instance, to what extent any fact-based information should be disclosed in light of any privilege log produced.

outside the legislature. *See, e.g.*, *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11-C-5065, 2011 WL 4837508, at *10 (N.D. Ill. Oct. 12, 2011) (legislative privilege did not apply to "outsiders to the legislative process," including "lobbyists, members of Congress and the Democratic Congressional Campaign Committee," who "could not vote for or against the Redistricting Act" or "work for someone who could"); *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003) ("no one could seriously claim privilege" for "a conversation between legislators and knowledgeable outsiders, such as lobbyists, to mark up legislation"), *aff'd*, 293 F. Supp. 2d 302 (S.D.N.Y. 2003); *Favors*, 285 F.R.D. at 212 (similar); *League of Women Voters of Mich. v. Johnson*, No. 17-14148, 2018 WL 2335805, at *6 (E.D. Mich. May 23, 2018) ("Communications between legislators or staff members and third parties consulted during the redistricting process are not protected by the legislative privilege."); *Baldus v. Brennan*, No. 11-CV-562, 2011 WL 6122542, at *2 (E.D. Wis. Dec. 8, 2011) ("The Legislature has waived its legislative privilege to the extent that it relied on such outside experts for consulting services.").[15]

---

[15]    In *Harkins*, the Court emphasized that the "legislative privilege can be waived when certain conditions apply"—for example, "when the Legislator publicly reveal[s] those documents." 67 F.4th at 687. *Abbott* added that the privilege does *not* apply when legislators "send privileged documents to third parties *outside* the legislative process." *Id.* Moreover, "a privilege log is necessary to determine which of the requested documents and communications are protected by legislative privilege." *Harkins*, 67

3. To the extent the legislative privilege does apply—and it does not—the privilege must yield in this case. In *Abbott*, the Court recognized that "[t]he legislative privilege gives way 'where important federal interests are at stake.'" 68 F.4th at 237 (quoting *United States v. Gillock*, 445 U.S. 360, 373 (1980)). Here, Plaintiffs allege that the Texas Legislature enacted S.B. 1 with an intent to discriminate against racial minorities. ROA.12575-76. And government officials "seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority." *Smith v. Town of Clarkton*, 682 F.2d 1055, 1064 (4th Cir. 1982). Thus, it is imperative that Plaintiffs be able to examine the most probative evidence regarding the Legislature's intentions—the Legislators' communications with political activists and lobbyists promoting the proposed legislation.

Determining whether the privilege should yield requires "balanc[ing]" the federal interests at stake and need of discovery against the purposes served by the privilege. *See Gillock*, 445 U.S. at 373. Regarding those purposes, *Abbott* emphasized the burden that would result from "Plaintiffs' attempt to require *state legislators* to produce documents." 68

---

F.4th at 687. Should the Court conclude that the legislative privilege can apply to documents in the possession of the Party, Plaintiffs respectfully request that the Court remand to the district court to determine, based on a privilege log, whether any of the requested documents are protected by the privilege. *See id.*

F.4th at 239 (emphasis added); *see also id.* at 240 (raising concern that "*state legislators* can be compelled" in that case).  But Plaintiffs do not seek to require the Legislators to produce documents. Instead, they seek documents from a private party outside the Legislature. Therefore, the Legislators will not be "subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader." *Id.* at 238. Consistent with this Court's emphasis that the privilege is "qualified" and must be "strictly construed," the privilege must yield here. *See Jefferson Cmty. Health Care Ctrs.,* 849 F.3d at 624 (quoting *Perez,* 2014 WL 106927, at *1, *2).

Accordingly, the legislative privilege does not protect the documents in the hands of the Party, and the district court properly concluded that the Party must produce them.

## CONCLUSION

For the foregoing reasons, this Court should dismiss this appeal for lack of jurisdiction, or at the very least, affirm the district court's order compelling the Party to produce the documents.

Respectfully submitted,

_/s/ Nina Perales_

Nina Perales
Fátima L. Menéndez
Julia R. Longoria
Kenneth Parreno
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATION FUND
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476
nperales@maldef.org

Michael C. Keats
Rebecca L. Martin
Jason S. Kanterman
FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP
One New York Plaza
New York, NY 10004
(212) 589-8000

_Counsel for La Unión del Pueblo
Entero; Southwest Voter
Registration Education Project;
Mexican American Bar
Association of Texas; Texas
Hispanics Organized for Political
Action; JOLT Action; William C.
Velasquez Institute; FIEL
Houston, Incorporated_

_/s/ Zachary D. Tripp_

Zachary D. Tripp
Allison D. Herzig
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7220
zack.tripp@weil.com

Elizabeth Y. Ryan
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, TX 75201
(214) 746-8158

Aaron J. Curtis
Heylee Bernstein
Charles Gehnrich
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8901

Sean Morales-Doyle
Leah Tulin
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
(212) 463-7308
_Counsel for Friendship-West
Baptist Church; Texas Impact;
James Lewin_

July 20, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

/s/ *Zachary D. Tripp*
Zachary D. Tripp
Weil, Gotshal & Manges LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7220
zack.tripp@weil.com

July 20, 2023

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record certifies pursuant to Fed. R. App. P. 32(g) that the Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f), this document contains 11,969 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Century Schoolbook font in 14-point size.

*/s/ Zachary D. Tripp*
Zachary D. Tripp
Weil, Gotshal & Manges LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7220
zack.tripp@weil.com

July 20, 2023