No. 23-50201

# In the United States Court of Appeals
# for the Fifth Circuit

La Union del Pueblo Entero; Friendship-West Baptist Church; Southwest Voter Registration education Project; Texas Impact; Mexican American Bar Association of Texas; Texas Hispanics Organized for Political Education; JOLT Action; William C. Velasquez Institute; James Lewin; Fiel Houston, Incorporated,

*Plaintiffs-Appellees*

*v.*

Gregory W. Abbott, in his Official Capacity as Governor of Texas, Et al,

*v.*

Senator Paul Bettencourt; Representative Briscoe Cain,

*Appellants*

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

## APPELLANTS' REPLY BRIEF

*(Counsel Listed on Inside Cover)*

Angela Colmenero
Provisional Attorney General

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

Michael R. Abrams
William F. Cole
Assistant Solicitors General

Justin W. Manchester
Assistant Attorney General

Counsel for Third-Party Appellants Senator Paul Bettencourt and Representative Briscoe Cain

# TABLE OF CONTENTS

Page

Table of Authorities ........................................................................... iii

Introduction ...................................................................................... 1

Argument .......................................................................................... 2

   I.   Plaintiffs Effectively Acknowledge That the Court Lacks Power
to Affirm the Order as Written ................................................. 2

   II.  To the Extent Any Portion of the Order Survives Mr. Vera, the
Court Has Jurisdiction to Reverse .......................................... 5

      A.  Legislators have third-party appellant standing ................. 5

      B.  *Abbott* forecloses Plaintiffs' arguments that this appeal falls
outside the collateral-order doctrine ................................. 12

   III. *Abbott* Forecloses Plaintiffs' Arguments on the Merits ........... 15

      A.  *Abbott* ruled that communications between Mr. Vera and the
Legislators are protected by the privilege ......................... 15

      B.  Legislative privilege was properly preserved .................... 18

Conclusion ...................................................................................... 24

Certificate of Service ...................................................................... 25

Certificate of Compliance ............................................................... 25

# Table of Authorities

Page(s)

**Cases:**

*Almonte v. City of Long Beach,*
   478 F.3d 100 (2d Cir. 2007) ..............................................................16

*In re Auclair,*
   961 F.2d 65 (5th Cir. 1992)............................................................... 22

*Bogan v. Scott-Harris,*
   523 U.S. 44 (1998) ................................................................... 17, 19

*Castillo v. Cameron County,*
   238 F.3d 339 (5th Cir. 2001) ...........................................5, 6, 7, 9, 11

*Chesapeake La., L.P. v. Petrohawk Props., L.P.,*
   394 F. App'x 152 (5th Cir. 2010) (per curiam)................................... 8

*Def. Distrib. v. Platkin,*
   55 F.4th 486 (5th Cir. 2022) .............................................................15

*FEC v. Cruz,*
   142 S. Ct. 1638 (2022)...................................................................... 12

*First Nat'l Bank of Ariz. v. Cities Serv. Co.,*
   391 U.S. 253 (1968) ........................................................................... 3

*Fisher v. United States,*
   425 U.S. 391 (1976) ......................................................................... 22

*Gaines v. Davis,*
   928 F.2d 705 (5th Cir. 1991) (per curiam)......................................... 3

*Gravel v. United States,*
   408 U.S. 606 (1972) ........................................................................... 1

*Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.,*
   768 F.2d 719 (5th Cir. 1985) .......................................................... 20

*In re Hubbard,*
   803 F.3d 1298 (11th Cir. 2015) .............................................18, 19, 20

*Jackson Mun. Airport Auth. v. Harkins,*
   67 F.4th 678 (5th Cir. 2023)............................................................16

*Jacobs v. Nat'l Drug Intel. Ctr.,*
   548 F.3d 375 (5th Cir. 2008) ...........................................................15

*Kelly v. Foti,*
77 F.3d 819 (5th Cir. 1996) ................................................................. 9

*La Union Del Pueblo Entero v. Abbott,*
68 F.4th 228 (5th Cir. 2023) ......................................................*passim*

*In re Lease Oil Antitrust Litig.,*
570 F.3d 244 (5th Cir. 2009) ............................................................... 6

*Lee v. City of Los Angeles,*
908 F.3d 1175 (9th Cir. 2018) ................................................17, 19, 21

*Mohawk Indus., Inc. v. Carpenter,*
558 U.S. 100 (2009) .............................................................10, 13, 14

*Montano v. Texas,*
867 F.3d 540 (5th Cir. 2017) ........................................................... 2, 5

*S.E.C. v. Forex Asset Mgmt. LLC,*
242 F.3d 325 (5th Cir. 2001) ........................................................... 6, 7

*In re Santa Fe Int'l Corp.,*
272 F.3d 705 (5th Cir. 2001) ............................................................. 20

*Tenney v. Brandhove,*
341 U.S. 367 (1951) ...............................................1, 5, 16, 17

*United States v. Johnson,*
383 U.S. 169 (1966) ......................................................................... 1

*United States v. Juarez,*
573 F.2d 267 (5th Cir. 1978) ............................................................. 22

*United States v. Soza,*
874 F.3d 884 (5th Cir. 2017) ........................................................... 8, 9

*Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.,*
429 U.S. 252 (1977) ........................................................................ 21

*Wiwa v. Royal Dutch Petroleum Co.,*
392 F.3d 812 (5th Cir. 2004) .............................................................. 4

**Statute and Rule:**
Restatement (Third) of the L. Governing Laws. § 76 cmt. g (Am. L.
Inst. 2000 & Supp. 2023) ............................................................ 20, 22

Fed. R. Civ. P. 45(a)(4) .............................................................. 9, 23

**Other Authorities:**
Appellants' Reply Br., *La Union Del Pueblo Entero v. Abbott,*
No. 22-50435, 2022 WL 3043239 (5th Cir. July 27, 2022)................................ 21

Julie A. Totten & Melissa C. Hammock, *Personal Electronic Devices in the Workplace: Balancing Interests in A* Byod *World*, 30 ABA J. Lab. & Emp. L. 27 (2014).............................................................. 4

8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2041 (3d ed. 1998 & Supp. 2023)............................................. 6-7, 23

# Introduction

Three months ago, this Court held that "[s]tate lawmakers can invoke legislative privilege to protect actions that occurred within 'the sphere of legitimate legislative activity.'" *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 235 (5th Cir. 2023) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). "As part of that process, lawmakers routinely meet with persons outside the legislature," so the Court explained that "some communications with third parties, such as private communications with advocacy groups, are protected by legislative privilege." *Id.* at 235-36 (cleaned up). Plaintiffs nonetheless insist that the Legislators are not entitled to invoke the privilege *here* because (1) Plaintiffs chose to seek discovery from the third parties to whom the Legislators spoke rather than the Legislators themselves, *e.g.*, Appellees' Br. 26-27, (2) the district court has not yet reached final judgment, *id.* at 28-29, and (3) the Legislators did not intervene "to become a party to [the] lawsuit," *id.* at 19. Plaintiffs are wrong on all counts.

For half a millennium, the legislative privilege has "foster[ed] the 'public good' by protecting lawmakers from 'deterrents to the uninhibited discharge of their legislative duty.'" *Abbott*, 68 F.4th at 233 (quoting *Tenney*, 341 U.S. at 377); *see also United States v. Johnson*, 383 U.S. 169, 178 (1966) (tracing the history of the privilege). The "core question" about whether that privilege applies is "whether a lawmaker may 'be made to answer—either in terms of questions *or* in terms of defending'" their actions from review by another branch of government. *Abbott*, 68 F.4th at 237 (quoting *Gravel v. United States*, 408 U.S. 606, 616 (1972)). That is what Plaintiffs seek to do here. Plaintiffs nevertheless insist that the Legislators had to submit

to the jurisdiction of the district court to preserve the confidentiality of their communications with third parties who participated in the legislative process. But that is contrary to existing authority—not to mention the purpose of the privilege itself.

The Court need not even reach that question, however, due to a more fundamental limitation on federal-court power: the documents were ordered produced to facilitate Plaintiffs' deposition of Allen Vera—who is now deceased. ROA.12564. Accordingly, the requests as written—and as ordered fulfilled—are moot. Although Plaintiffs repeatedly insist (*e.g.*, at 38) they have other reasons to want the same documents, those reasons are not the bases on which the district court ordered them produced. Appellants' Br. 29-30. Because this is a "court of review, not of first view," *Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017), the district court should decide the impact of *Abbott* and Vera's death in the first instance.

**ARGUMENT**

## I. Plaintiffs Effectively Acknowledge That the Court Lacks Power to Affirm the Order as Written.

Plaintiffs acknowledge (at 37) that Vera's sudden death moots the order compelling his deposition. *See* Appellants' Br. 29-32. And they do not dispute that, in the district court, they sought Vera's emails because "Plaintiffs were unable to question Mr. Vera adequately about his communications with legislators and legislator staff" without the documents. ROA.12564; *see also* Appellees' Br. 38. Nor can they deny that this is the basis upon which the district court ordered production of the documents. ROA.12779. Nevertheless, Plaintiffs insist (at 38-39) that this appeal is not moot because someone at the Harris County Republican Party ("HCRP") could still

be ordered to search Vera's email even without Vera's assistance. Perhaps. But that possibility should not obscure that the district court did not order such relief and that this Court lacks any power to affirm the order as written.

As Legislators explained (at 31-32), the district court granted the motion to compel to allow Plaintiffs to question Vera about withheld documents. True, those documents were sent on HCRP's behalf. But to avoid questions about the custody and control of Vera's personal documents, the district court ordered Plaintiffs to "depose [Vera] in his individual capacity and require a [subpoena] duces tecum for Requests of Productions 1 and 3." ROA.13206; *see also* ROA.12779. Because Vera is no longer able to attend a deposition—documents in tow—the dispute as originally framed is moot. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 272 (1968).

To be sure, Plaintiffs have other ways to obtain those documents. The district court may be able to craft a new discovery order granting Plaintiffs' *new* request to require HCRP to produce the documents without Vera's assistance. *See, e.g.*, *Gaines v. Davis*, 928 F.2d 705, 707 (5th Cir. 1991) (per curiam). But doing so requires the district court to address thorny custody questions that it initially sidestepped by compelling production by Vera in his personal capacity. These unaddressed custody questions are apparent in what HCRP produced during discovery. Plaintiffs served their requests for production on HCRP. ROA.12636. Based on a search of official HCRP email addresses, ROA.12636, including documents Vera forwarded to HCRP email addresses, ROA.13195, HCRP produced 61 responsive documents, ROA.12561, 12636. Plaintiffs now seek additional documents which were maintained by Vera, an unpaid volunteer, ROA.12641, on his personal computer, ROA.12659,

and transmitted via his personal email address, ROA.12662, regardless of whether the documents were ever forwarded to HCRP email addresses, ROA.12662, 13195.

This Court's sister circuits are split regarding whether an employer has custody or control—and therefore must produce—data on personal devices of even current employees or agents. *See* Julie A. Totten & Melissa C. Hammock, *Personal Electronic Devices in the Workplace: Balancing Interests in A* Byod *World*, 30 ABA J. Lab. & Emp. L. 27, 39 & nn.61-62 (2014) (collecting cases). This Court follows the narrower rule of custody and control; the rule turns on whether the subpoenaed party has a legal entitlement or practical ability to obtain the material. *Id.* at 39 n.62 (citing *inter alia Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 821 (5th Cir. 2004)).

The district court avoided the issue by ordering Vera to produce the material in both his individual capacity and his capacity as an agent of HCRP. ROA.12777. Accordingly, the district court ordered *both* "Vera *and* the HCRP produce all documents responsive to the two requests for production." ROA.12779 (emphasis added). The Court cannot affirm that order as written: Vera can no longer produce documents in *any* capacity.

At minimum, the order needs to be reconsidered. Under this Court's rule, even when a former employee is living, "custody or control" does *not* extend to all materials "to which [a party] could conceivably have access by virtue of [a] prior position with" an employer. *Wiwa*, 392 F.3d at 821. Here, the control issue is even more difficult because the record is silent on whether Vera's personal email address still exists, who has physical custody of his personal effects, or whether HCRP can search for the documents without that individual's assistance. It is *possible* the district court

would issue an order compelling HCRP to conduct the search—notwithstanding the limitations *Abbott* placed on Plaintiffs' ability to invade legislative privilege—but the district court should make that determination in the first instance. *See, e.g.*, *Montano*, 867 F.3d at 546.

## II. To the Extent Any Portion of the Order Survives Mr. Vera, the Court Has Jurisdiction to Reverse.

### A. Legislators have third-party appellant standing.

Plaintiffs cannot avoid the conclusion that the district court's order should be reversed by asserting (at 19) that the Legislators lack standing to appeal the order. After all, Plaintiffs acknowledge (at 19-20) that the Legislators have standing to appeal if they can meet the three-part test in *Castillo v. Cameron County*, 238 F.3d 339 (5th Cir. 2001).

As the Legislators have explained (at 25-29), they do. *First*, though they were not invited to every deposition, Legislators participated in the underlying proceeding and asserted legislative privilege—including over communications with Vera—when the materials were sought from them. Appellants' Br. 26-27. *Second*, the equities weigh in favor of third-party appellant standing because this Court has already held that there is no effective remedy for a wrongful disclosure of information protected by legislative privilege, which "serves the 'public good' by allowing lawmakers to focus on their jobs rather than on motions practice in lawsuits," *Abbott*, 68 F.4th at 237 (quoting *Tenney*, 341 U.S. at 377)—or attending every deposition at which their communications may be raised, Appellants' Br. 27-28. *Third*, the

Legislators have a personal stake in the outcome of this appeal, which addresses a privilege that Plaintiffs argue (at 39-40) is "personal" to them. Appellants' Br. 28.

None of Plaintiffs' arguments to the contrary are availing.

**1.** To begin, Plaintiffs primarily assert (at 21-22) that the Legislators did not adequately participate in the proceeding below because they did not seek to intervene as parties, attend Vera's deposition, or both. This argument fails for at least four reasons.

*First*, to the extent Plaintiffs mean to suggest (at 19), that the Legislators had to "become a party to [the] lawsuit," the argument is anathema to the notion of legislative privilege itself. "[T]he common-law legislative immunity for state legislators is absolute," and this Court has never required them to waive it to assert privilege. *Abbott*, 68 F.4th at 240.

*Second*, third-party standing is only relevant when a party has *not* intervened. Indeed, the *Castillo* doctrine does not even require third-party appellants to unsuccessfully seek intervention. *See S.E.C. v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 330 & n.5 (5th Cir. 2001). This explains why this Court often discusses intervention as an alternative to third-party appellant standing—not as a prerequisite. *See In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 249 (5th Cir. 2009).

*Third*, Plaintiffs misstate (at 23) any purported concession by the Legislators that they failed to raise their objection below. Plaintiffs cite a question from the district court about whether the Legislators objected at "the time that Mr. Vera was being deposed." ROA.13191. As only "the parties, their officers, and counsel" have a right to be present at such events, 8A Charles Alan Wright & Arthur R. Miller, *Federal*

*Practice and Procedure* § 2041 (3d ed. 1998 & Supp. 2023), counsel unsurprisingly acknowledged that no attorney represented the Legislators *at that deposition*, ROA.13191. When opposing the post-deposition motion to compel, however, counsel expressly stated that they "also represent these legislators," so "the assertion of this privilege, [is] really more by the attorney than the State defendant[s] themselves." ROA.13190. Similarly, the brief filed that day stated that OAG "represents specific legislators in this case," who had "requested that counsel . . . vigorously defend the privileges to which they are entitled." ROA.12698. This was sufficient participation to establish the first element of *Castillo*. *S.E.C.*, 242 F.3d at 329 (noting that standing can be established by "timely filing [a] claim, filing objections, and attending the hearing on the claim"). Indeed, opposing the motion to compel was the first time the Legislators could participate to oppose the production of documents, as none of the parties knew that Vera had privileged emails until he disclosed their existence at his first deposition. *See* ROA.12659 (explaining that HCRP had not searched Vera's personal files).

True, the district court said that OAG attorneys *could* not represent the Legislators regarding the motion to compel because they *did* not represent the Legislators "at the time of Mr. Vera's deposition." ROA.13190-91; *see also* ROA.12779. But this supports Legislators' standing to appeal because it shows that they *sought* to participate once they had notice but were denied leave. *Cf. S.E.C.*, 242 F.3d at 330 n.5 (noting that appellate standing is more likely present when a party sought and was

denied leave to intervene).[1] Moreover, as the Legislators explain (at 38-39; *see also infra* pp. 18-24), this theory of forfeiture is unworkable, and based on a now-defunct district-court decision holding that any communication with third parties waives the privilege. ROA.12776.

*Fourth*, Plaintiffs are wrong (at 20) to dismiss the Legislators' prior and extensive involvement in this case. After all, the discovery order is little more than a statement incorporating what the district court "already noted" in the opinion that was ultimately reversed in *Abbott*. *See* ROA.12776. There can be little doubt under such circumstances that the argument was preserved for appeal: the Legislators clearly raised the argument "to such a degree that the district court ha[d] an opportunity to rule on it." *United States v. Soza*, 874 F.3d 884, 889 (5th Cir. 2017). The Legislators did so both at the hearing on the motion to compel, ROA.13190-91, and in their brief in opposition, ROA.12698. Indeed, the district court penalized counsel attempting to preserve the Legislators' privilege by ordering that deposition costs be assessed against OAG because the OAG attorneys "knew or should have known of [its] prior rulings on this matter," ROA.12779 — after all, they were many of the same lawyers, ROA.12779, *see also* ROA.10481-82.

Relatedly, Plaintiffs wrongly argue (at 23) that the Legislators are trying to have it both ways in arguing that this appeal is separate from the merits (and subject to the

---

[1] This Court's (unpublished) opinions, holding that parties who participate early in a case but drop out before issuance of the appealed order, are thus inapposite. *See Chesapeake La., L.P. v. Petrohawk Props., L.P.*, 394 F. App'x 152, 153 (5th Cir. 2010) (per curiam). Legislators would have continued to participate if permitted.

collateral-order doctrine) yet interrelated enough with *Abbott* for Legislators' participation in *Abbott* to constitute participation here. This conflates two issues. As discussed in *Abbott*, application of the collateral-order doctrine turns on whether an issue is separate from the *merits* of a lawsuit—here, the constitutionality of S.B. 1. 68 F.4th at 235; *see also infra* pp. 12-13. That is a separate question from whether two discovery orders that are *each* subject to the collateral-order doctrine are nonetheless sufficiently related to *each other* that participation in one "present[ed] the issue" raised in the other "so that it places the opposing party and the court on notice that a new issue is being raised." *Soza*, 874 F.3d at 889 (quoting *Kelly v. Foti*, 77 F.3d 819, 823 (5th Cir. 1996)).

Here, the district court was aware—and dismissive—of the Legislators' objections from their prior involvement in the case. This awareness would be sufficient to preserve the argument for appellate review. *See id.* Plaintiffs point to no reason in law or logic to conclude that sufficiently raising an issue to preserve it for appeal is somehow not sufficient to establish participation under *Castillo*'s first prong.

**2.** Under *Castillo*'s second prong, the equities weigh in favor of the Legislators' third-party standing to appeal. As nonparties, the Legislators are not served with discovery requests that are served on others. *See* Fed. R. Civ. P. 45(a)(4). But in this instance, the discovery served on HCRP and Vera directly affected the Legislators' rights—even if they were not the ones who would be deposed. *Contra* Appellees' Br. 26-27. After all, although this Court noted in *Abbott* that legislators should not be deposed as "[t]hey cannot get that time back," 68 F.4th at 233, the Court also explained that a discovery order is subject to the collateral-order doctrine as "an

appellate court cannot 'remedy the improper disclosure of privileged material,'" *id.* (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 109 (2009)). Even if non-parties could object to the admission of privileged information or move for a new trial, "a new trial cannot retract privileged information that has been shared into the public domain." *Id.*[2]

Plaintiffs counter (at 25-26) that the Legislators effectively slept on their rights because they knew of the district court's order compelling HCRP. But Plaintiffs cite nothing in the record demonstrating that the subpoena was served on the third-party Legislators. True, OAG attorneys were served with notice of Plaintiffs' intent to depose Vera as HCRP's representative, ROA.12586-87, and the First Amended Requests for Production, ROA.12628-30. But that only counts as notice to the third-party Legislators if OAG always represents the Legislators and state defendants in a dual capacity. Moreover, even if it did count for notice purposes, there is nothing in the record showing Legislators knew Plaintiffs' intended topics for the deposition. And because this Court stayed the discovery order in *Abbott*, it is especially unlikely Legislators knew that Plaintiffs intended to discuss materials subject to that appeal. Instead, attorneys for HCRP responded to the relevant requests for production and conferred with Plaintiffs' counsel concerning the scope of Vera's deposition. ROA.12582-84, 12610-14, 12618-19, 12636-37. Those correspondences do not indicate they should be served on the third-party Legislators. *See*

---

[2] For this reason, Plaintiffs' insistence (at 27) that the equities weigh in their favor because any harm can be remedied on final appeal is squarely foreclosed by *Abbott.*

ROA.12582-84, 12610-14, 12618-19, 12636-37. Thus, the Legislators were unaware they needed to personally attend Vera's deposition to preserve their privilege.

**3.** Finally, there can be little dispute that the Legislators meet the final element of *Castillo*—a personal stake in the outcome—because this appeal is entirely about a privilege that Plaintiffs repeatedly insist (*e.g.*, at 36, 39-40) is personal to each legislator. Plaintiffs' only unique argument on this prong is that the revelation of privileged information is nothing more than a "ramification of the fact that the information has already been given to a private third party." Appellees' Br. 28. But *Abbott* has rejected the theory that information "given to a private third party," *see id.*, automatically loses its privileged status. As this Court explained, "Plaintiffs' 'waiver' argument" is best seen not as an exception, but as an indirect attack on the privilege's scope," which if accepted, "would swallow the rule almost whole." *Abbott*, 68 F.4th at 236. Even if the Court were not bound by the rule of orderliness on this point, *Abbott* was entirely correct for the reasons already explained.

**4.** No more meritorious are Plaintiffs' attacks on the Legislators' ability to challenge two specific aspects of the district court's order that (as a whole) allowed Plaintiffs to circumvent their privilege by re-deposing an individual who was a part of the legislative process. *First*, Plaintiffs are wrong (at 39) that the Legislators may not seek vacatur of the portions of the order compelling OAG to bear the costs of re-deposing Vera. Here, costs were imposed on OAG, ROA.12779, for preserving privilege objections that no one disputes were properly preserved in *Abbott*, *see* ROA.10458-64; *see also* 10481-82 (noting OAG's representation in *Abbott*), because the district court had already heard and rejected the assertion of privilege before, *see*

ROA 13219-20. The Legislators are harmed by the penalty. It is those OAG attorneys who must continue pressing the objections—in the face of the district court's threats—to prevent the exposure of the Legislators' confidential communications. Assuming that the Legislators are correct on the merits—as this Court assumes in assessing standing—then the Court has jurisdiction to vacate the entire order. *See F.E.C. v. Cruz*, 142 S. Ct. 1638, 1647 (2022) ("For standing purposes, we accept as valid the merits of appellees' legal claims.").

*Second*, Plaintiffs are also wrong (at 36-37) that because the privilege is "personal," the Legislators lack appellate standing to assert legislative privilege over communications between Senators Jetton and Swanson and Vera. As the Legislators explained (at 36-37), to call a privilege "personal" is to reference who may *waive* the privilege. When, as here, the privilege is held by multiple individuals over a topic of shared interest, each individual privilege holder can unilaterally waive privilege over *their* communications without regard for other privilege holders, *see* Appellants' Br. 36-37, but each individual legislator may assert the privilege to keep confidential the legislative process in which they all participated, *see infra* pp. 22-24. As a result, the Legislators had standing to invoke this Court's jurisdiction.

## B. *Abbott* forecloses Plaintiffs' arguments that this appeal falls outside the collateral-order doctrine.

**1.** *Abbott* also confirms that this Court has subject-matter jurisdiction under the collateral-order doctrine. *Contra* Appellees' Br. 28-36. Examining substantively identical arguments to those presented here, this Court held that "orders denying non-party state-legislators' assertions of legislative privilege," as a "class," are

"immediately appealable." *Abbott*, 68 F.4th at 232. *First*, this class of order is con-clusive as "failure to comply with it may result in sanctions against" the party asserting the privilege, *id.* at 233—indeed, it already has, ROA.12779 (imposing costs), 13206-07 (threatening any future objecting lawyer with contempt of court). *Second*, this class of appeal raises issues separate from the merits of the legality of various provisions of S.B. 1. *Abbott*, 68 F.4th at 233. *Third*, these issues cannot be vindicated following final judgment because non-party "legislators cannot move for a new trial." *Id.*

Abbott also directly held that "[n]othing in *Mohawk* forbids jurisdiction here" because it provides no guidance for "how the collateral-order doctrine applies to 'governmental privileges.'" *Id.* at 234 (quoting *Mohawk*, 558 U.S. at 113 n.4). Here, as in *Abbott*, *Mohawk* does not govern as "non-parties (not litigants)" are "asserting legislative privilege (not attorney-client privilege)." *Id.* Although Vera is not himself a governmental official, that distinction cannot matter because *Abbott* already held that Vera was "brought . . . *into* the [legislative] process." *Id.* at 237.

**2.** None of the Plaintiffs' attempts to distinguish *Abbott* has merit. *First*, Plain-tiffs assert (at 31) that the order is not conclusive because the district court did not sanction or threaten sanctions against the Legislators personally. But that ignores that the collateral-order doctrine applies to the *class* of appeals—not the specific terms of the order. *Id.* at 232. Even if that were untrue, the district court threatened "[a]ny lawyer" who continued to "assert that privilege" on the Legislators' behalf with "contempt of court." ROA.13202. Because lawyers for represented individuals make objections at depositions, this order was no less conclusive than if the sanctions

were aimed at the Legislators themselves. That is particularly true given that the district court further reiterated that its warning applied to all attorneys working for OAG. *See* ROA.13206-07.

*Second*, Plaintiffs claim (at 32) that this issue lacks the importance of *Abbott* because the Legislators are not the targets and did not participate below. As already explained, the Legislators were denied the opportunity to object at Vera's deposition. *See supra* pp. 6-8. In any event, the importance of legislative privilege is supported both by the contents of the communications as well as the burdens of discovery. *See Abbott*, 68 F.4th at 233 ("[A] new trial cannot retract privileged information that has been shared into the public domain."). Plaintiffs' second argument (at 32-32)—that the issue is not important unless Legislators are personally deposed—fails for the same reason. *See also infra* pp. 16-17.[3]

*Third*, citing *Mohawk*, Plaintiffs point (at 33-34) to alternative forms of relief that may be available including intervention, requests for certified judgment, or mandamus. But they acknowledge (at 35) that such relief was also available in *Abbott*. 68 F.4th at 233. It is no answer to (yet again) point out that, unlike in *Abbott*, the Legislators were not the target of the discovery requests: the additional degree of separation would make it more difficult to invoke the post-verdict remedies that this Court

---

[3] Relatedly, Plaintiffs assert (at 33), citing *Mohawk*, that allowing the privilege to be reviewed on final judgment would not disrupt communications between legislators and constituents. Assuming that is true (which is far from clear), this Court has already found that the types of concerns that drive the attorney-client privilege in *Mohawk* do not automatically track the legislative privilege at issue here. *See Abbott*, 68 F.4th at 234.

found to be an insufficient remedy in *Abbott*. *Id*. Moreover, this argument once again depends on the premise that Legislators "let the proverbial cat out of the bag" by sharing privileged material with Vera. Appellees' Br. 35. Any argument with that premise cannot distinguish *Abbott* because the premise itself was rejected *in Abbott*. 68 F.4th at 236. Because Plaintiffs cannot distinguish *Abbott*'s analysis of the collateral-order doctrine, their jurisdictional arguments are without merit.

## III. *Abbott* Forecloses Plaintiffs' Arguments on the Merits.

### A. *Abbott* ruled that communications between Mr. Vera and the Legislators are protected by the privilege.

*Abbott* also forecloses Plaintiffs' arguments on the merits—as Plaintiffs openly acknowledge (at 46 n.12). Whatever the merits of their disagreement with *Abbott* (and there are none), "[t]he rule of orderliness means that 'one panel of [the] court may not overturn another panel's decision, absent an intervening change in law, such as by statutory amendment, or the Supreme Court, or our *en banc* court.'" *Def. Distrib. v. Platkin*, 55 F.4th 486, 495 n.10 (5th Cir. 2022) (quoting *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008)). Because there have been no such intervening changes in the law in the 90 days since *Abbott* was decided, *Abbott* controls.

Plaintiffs sole attempt to distinguish *Abbott*—repeated three times under the banner of scope (at 48), waiver (at 49), and whether the qualified privilege yields in this case (at 52)—is that they seek to depose Vera instead of the Legislators themselves. This ignores that the materials at issue in *Abbott* expressly included emails to and from Vera. ROA.10458-64. Nevertheless, the Court reversed the district court in its entirety, holding that communications with Vera fell within the scope of the

Legislators' privilege. *Abbott*, 68 F.4th at 232. The Court reasoned from the premise that the legislative privilege protects the legislative *process*—not just legislators' personal interests—and thus is "necessarily broad" enough to include meetings "with persons outside the legislature—such as executive officers, partisans, political interest groups, or constituents—to discuss issues that bear on potential legislation." *Id.* at 236 (quoting *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007)). None of Plaintiffs' reasons for why this case should turn out differently has any merit.

*First*, Plaintiffs speculate (at 45) that Vera could have released the documents to news outlets. But that is true *any* time a third party has access to privileged material. Nevertheless, this Court has expressly held—twice—that the privilege is only "waived when the Legislator *publicly* reveal[s] those documents." *Abbott*, 68 F.4th at 237 (alteration in original) (quoting *Jackson Mun. Airport Auth. v. Harkins*, 67 F.4th 678, 687 (5th Cir. 2023)). "The very fact that Plaintiffs need discovery to access these documents shows that they have not been shared publicly." *Id.*

*Second*, Plaintiffs accuse (at 46-47) the Legislators of asserting that the privilege protects every document that "has crossed a legislator's desk." Not so. The Legislators merely stand on this Court's conclusion that their communications with Vera were "within 'the sphere of legitimate legislative activity.'" *Abbott*, 68 F.4th at 235 (quoting *Tenney*, 341 U.S. at 376).

*Third*, Plaintiffs insist (at 48) that the privilege is not even implicated because the Legislators will not personally bear the "cost, inconveniences, or distractions in the proceedings below." This Court has already recognized, however, that having to

16

sit for a deposition is only one part of the harm: another "deterrent[] to the uninhibited discharge of their legislative duty" is the release of confidential information into the public. *Abbott*, 68 F.4th at 232-33 (quoting *Tenney*, 341 U.S. at 377). "[I]t simply is 'not consonant with our scheme of government for a court to inquire into the motives of legislators.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (quoting *Tenney*, 341 U.S. at 377). This shield from the scrutiny of the other branches "allow[s] duly elected legislators to discharge their public duties without concern of adverse consequences outside the ballot box." *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018). Using judicial subpoenas to publicly reveal privileged information for potential second guessing by executive officers operates in direct conflict with this principle. *See Abbott*, 68 F.4th at 237. That is why courts have held that application of the privilege turns on whether the *action* is legislative—not the motives or intent of the legislators. *See Bogan*, 523 U.S. at 55.

*Fourth*, Plaintiffs misread *Abbott* (at 48) as protecting only documents that may reveal a legislators' "mental impression[]." Although *Abbott* did give such documents as an example of when the privilege may apply, it did so in the context of highlighting the line-drawing problems that would arise if courts were to engage in the type of motive-based inquiries Plaintiffs demand and that this Court rejected. *See* 68 F.4th at 236. Instead, courts consider only "whether, stripped of all considerations of intent and motive, petitioners' actions were legislative." *Bogan*, 523 U.S. at 55. Because *Abbott* has already unequivocally held that the communications at issue were legislative actions, Plaintiffs' effort to distinguish *Abbott* are without merit.

## B. Legislative privilege was properly preserved.

Finally, Plaintiffs cannot evade *Abbott* by asserting (at 40 & n.11)—based entirely on district-court opinions—that OAG attorneys did not properly object to preserve the privilege at the deposition. As discussed above, *supra* pp. 6-8, the same lawyers represent both the state defendants and the Legislators in this action. Although the OAG attorney present at Vera's deposition attended in his capacity as counsel for the state defendants, that does not affect the preservation of the objection for the same reasons it did not deprive the Legislators of standing to appeal. *Supra* pp. 8-9. And in any event, no party in this case was even aware of Vera's emails until the deposition, ROA.2659, so the first time the Legislators could object to the motion to compel the production of those documents was the motion itself—which the Legislators did oppose, ROA.12698. Plaintiffs' assertions to the contrary ignore that the state defendants themselves have standing to assert the privilege on behalf of members of the legislative process. Appellants' Br. 35-36.

1. As the Legislators explained (at 34), the Eleventh Circuit expressly held in *In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015), that executive-branch officers may assert the legislative privilege over matters in which they acted in a legislative capacity. Specifically, the *Hubbard* plaintiffs attempted to depose the current and former governors of Alabama. *Id.* at 1301-02. Although the current governor asserted executive privilege in response to subpoenas, the Eleventh Circuit resolved the appeal based on his alternative assertion that his communications were protected by legislative privilege. *Id.* at 1304, 1307. As this Court did in *Abbott*, the *Hubbard* court reasoned that "[t]he privilege protects the legislative process itself, and therefore

covers *both governors*' and legislators' actions in the proposal, formulation, and passage of legislation." *Id.* at 1308 (emphasis added).

This principle flows directly from the premise—endorsed by the Supreme Court—that legislative immunity "turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. Executive officers can take actions that are legislative, the Court explained, and they "are entitled to legislative immunity when they perform legislative functions." *Id.* at 55. Indeed, in *Bogan*, the Supreme Court upheld a petitioner's claim to legislative immunity because, "even though he was an executive official," his actions "were formally legislative." *Id.*

Plaintiffs do not contest the fact that many of the state defendants, although executive officers, acted in legislative capacities during the passage of S.B. 1. *See* Appellants' Br. 35. For good reason: *Abbott* squarely held that advice from executive officials, including advice "solicited from the office of the Secretary of State," fell within the scope of legislative privilege. 68 F.4th at 236. Because the state defendants were within "the legislative process itself," *id.* at 235 (quoting *Hubbard*, 803 F.3d at 1308), they had standing to object to preserve the privilege. Plaintiffs make three contrary arguments. None have merit.

*First*, Plaintiffs fault (at 41-42) the Legislators for citing *Lee* and claim that "the Legislators are unable to identify any authority indicating that members of the *executive branch* are entitled to assert the privilege." But Plaintiffs conspicuously do not respond to *Hubbard.*

Plaintiffs also ignore that the Legislators also explained in their opening brief (at 35-36) that every party who has an interest in the privilege has the right to assert it. This is true of the common-law common-interest exception. *See Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985). Under that exception to waiver by disclosure to third parties, waiver does not occur "if a privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication." *Id.* And it is black-letter law that "[a]ny member of a common-interest arrangement may invoke the privilege against third persons, even if the communication in question was not originally made by or addressed to the objecting member." Restatement (Third) of the L. Governing Laws. § 76 cmt. g (Am. L. Inst. 2000 & Supp. 2023); *see also In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001).

Plaintiffs give no reason to doubt that legislative privilege may be asserted under traditional common-interest principles. Because they cannot. In *Abbott*, this Court held that the legislative privilege protects "the legislative process itself." 68 F.4th at 235 (quoting *Hubbard*, 803 F.3d at 1308). The Court then explained that sharing confidential information with non-legislators did not waive the privilege because "legislators did not send privileged documents to third parties *outside* the legislative process; instead they brought third parties *into* the process." *Id.* at 237. This is remarkably similar to the common-interest doctrine in the attorney-client-privilege context, where aligned parties with shared representation may assert attorney-client privilege over the entire shared representation. *See Santa Fe Int'l Corp.*, 272 F.3d at 710. Indeed, in their reply brief in *Abbott*, the Legislators expressly argued that

20

communications with executive-branch officers did not waive attorney-client privilege because of the Legislators' and the state defendants' "shared interest in passing legislation that would survive the litigation that the Legislators knew would follow." Appellants' Reply Br. at 21-22, *La Union Del Pueblo Entero v. Abbott*, No. 22-50435, 2022 WL 3043239 (5th Cir. July 27, 2022). If the common-interest exception applies when determining whether legislative privilege has been waived, it should likewise apply when determining which parties may assert the privilege.

*Second*, Plaintiffs assert (at 42) such a rule would disrupt the separation of powers and disregard the "personal" nature of the legislative privilege. But as Legislators have already explained (at 28-29)—and Plaintiffs nowhere directly refute—the "personal" nature of the privilege refers only to who may waive the privilege, not who within its scope may invoke it. Far from upsetting the separation of powers, allowing executive officials to assert legislative privilege better prevents the "judicial inquiries into legislative or executive motivation" than any alternative Plaintiffs seem to suggest. *Lee*, 908 F.3d at 1187 (quoting *Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977)). After all, Plaintiffs make no direct response to Legislators' point (at 38-39) that under their view, legislators would have to attend every deposition at which their documents might be discussed or risk release, without possible retraction, of privileged information "into the public domain." *Abbott*, 68 F.4th at 233. Unless executive-branch lawyers can assert legislative privilege on their behalf, this would necessarily involve the type of disruption that even Plaintiffs acknowledge (at 47-48) justifies the privilege under *Abbott*.

*Third*, Plaintiffs claim (at 42-43) that the state defendants must be a part of the communication for which the privilege is invoked. But as already explained, the state defendants were parties to the legislative process that resulted in S.B. 1. And *Abbott* also held that Vera was brought "*into* the [legislative] process." 68 F.4th at 237. Thus, as explained in the Legislators' opening brief (at 35), there was privity of the legislative process between Vera, the state defendants, and the Legislators. The relevant inquiry should be into whether the communication was protected by a legislative privilege of which both the state defendants and Vera shared. Whether the state defendants were a party to the exact communication at issue is irrelevant. *See* Restatement (Third) of the L. Governing Laws., *supra*, § 76 cmt. g; *In re Auclair*, 961 F.2d 65, 70 (5th Cir. 1992).

**2.**    In addition to having standing to assert the privilege on their own behalf, state defendants could assert the privilege over matters within the same common interest. Contrary to Plaintiffs' suggestion (at 42), the Legislators do not contend that the state defendants were their agents during Vera's deposition. Rather, the Legislators used (at 36-38) the attorney-client privilege as a common example of what it means to be a "personal" privilege: namely, a privilege that only the privilege holder can waive. Under common-law principles of attorney-client privilege, an attorney has the ability, and often the obligation, to assert the privilege because she does not have authority to waive it. *See Fisher v. United States*, 425 U.S. 391, 402 (1976); *see also United States v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978). Applying an analogous principle here, neither the state defendants nor Vera had the power to

waive the Legislators' privilege, but they had the authority if not the obligation to invoke the privilege to prevent disclosure of privileged information.

Plaintiffs insist (at 43-44) that this is not true and that the Legislators should have attended Vera's deposition. But they cite nothing in the record demonstrating that the Legislators even knew of the deposition. *See supra* pp. 10-11. To the contrary, the subpoena was served on Vera, HCRP, and the OAG attorneys who Plaintiffs insist were representing only the state defendants, not the Legislators. ROA.12586-87, 12628-30. Plaintiffs nowhere explain how the participation of the *same* OAG lawyers suffices to establish notice but not to preserve the objection. Because they cannot: the lawyers either represented the Legislators for the purposes of the deposition, or they did not. And even if notice were present here, Plaintiffs do not explain how legislators, as nonparties, will be guaranteed either notice or the right to attend in the future when both are required only for parties to the case. *See* Fed. R. Civ. P. 45(a)(4). Nor do Plaintiffs grapple with the fact that this Court has already rejected that post-hoc remedies, such as the ones Plaintiffs suggest (at 44), are insufficient to protect the legislative privilege of third-party legislators. *See Abbott*, 68 F.4th at 233.

At bottom, like their waiver argument in *Abbott*, Plaintiffs' forfeiture rule is an exception that "would swallow the rule almost whole." *Id*. at 236. Because legislators enjoy absolute immunity, they will almost never be parties to litigation, *id*. at 239, so they will rarely attend a deposition at which their documents may be discussed, Wright & Miller, *supra*, § 2041. Yet Plaintiffs would have this Court hold that their absence from such depositions forfeits the privilege. That is irreconcilable

with this Court's ruling that Plaintiffs cannot obtain documents or testimony from the Legislators themselves lest it cause harm to the "public good." *Abbott*, 68 F.4th at 233.

## Conclusion

Given his death, the Court should vacate the district court's order granting Plaintiffs' motion to compel further discovery from Vera. The Court should reverse any portion of the order that survives.

Respectfully submitted.

Angela Colmenero
Provisional Attorney General

Brent Webster
First Assistant Attorney General

/s/ Lanora C. Pettit
Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

Michael R. Abrams
William F. Cole
Assistant Solicitors General

Justin W. Manchester
Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Third-Party Appellants Senator Paul Bettencourt and Representative Briscoe Cain

## CERTIFICATE OF SERVICE

On August 24, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Lanora C. Pettit
LANORA C. PETTIT

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 6,490 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rules 27(d)(1)(E) and 32(a)(5) and the type style requirements of Rules 27(d)(1)(E) and 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Lanora C. Pettit
LANORA C. PETTIT